IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| WOONASQUATUCKET RIVER WATERSHED COUNCIL, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> DEPARTMENT OF AGRICULTURE, *et al.*, <br><br> *Defendants*. | Case No. 1:25-cv-00097-MSM-PAS |

## **NOTICE REGARDING DEPARTMENT OF EDUCATION v. CALIFORNIA**

Plaintiffs submit this notice to update the Court on developments in *California v. Department of Education*, No. 25-cv-10548 (D. Mass.), which Plaintiffs cite in their preliminary injunction briefing.

On Friday, April 4, the Supreme Court issued a per curiam order in that case staying the district court's temporary restraining order pending appeal. *Dep't of Ed. v. California*, No. 24A910, 2025 WL 1008354 (U.S. Apr. 4, 2025) ("*California*"). As the Court majority characterized it, that TRO "enjoin[ed] the Government from terminating various education-related grants" and "also requires the Government to pay out past-due grant obligations and to continue paying obligations as they accrue." *Id.* at *1. The majority found that the federal government was likely to show that "the APA's limited waiver of immunity does not extend to orders 'to enforce a contractual obligation to pay money' along the lines of what the District Court ordered here." *Id.* (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U. S. 204, 212 (2002)).

1

The majority also concluded that the challengers had not shown they would suffer *any* irreparable harm if the TRO were stayed:

> [T]he Government compellingly argues that respondents would not suffer irreparable harm while the TRO is stayed. Respondents have represented in this litigation that they have the financial wherewithal to keep their programs running. So, if respondents ultimately prevail, they can recover any wrongfully withheld funds through suit in an appropriate forum. And if respondents instead decline to keep the programs operating, then any ensuing irreparable harm would be of their own making.

*Id.*

Whether to issue a stay pending appeal "is dependent upon the circumstances of the particular case." *Nken v. Holder*, 556 U.S. 418, 433 (2009); *see also id.* ("[T]he traditional stay factors contemplate individualized judgments in each case") (quoting *Hilton v. Braunskill*, 481 U.S. 770, 777 (1987)). For several reasons, *California* is readily distinguishable from this case, and the Supreme Court's fact- and circumstances-specific stay ruling does not undermine Plaintiffs' entitlement to preliminary relief here.

First, an essential element of the majority's decision in *California* was that the state challengers had not shown that *any* irreparable harm would result if a stay were granted. The *California* majority relied in particular on the fact that the state challengers there "represented in this litigation that they have the financial wherewithal to keep their programs running" even without the terminated federal grants. 2025 WL 1008354, at *1. That alone was likely fatal to the states' position. *See Winter v. NRDC*, 555 U.S. 7, 22 (2008) ("Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury

is likely . . . ." (emphasis omitted)). And it is worlds away from this case, where the record is replete with evidence of the severe irreparable harm that would result if the challenged freeze policies are not preliminarily enjoined. *See* Mot. at 28–35; Reply at 31–33. Indeed, Defendants barely contest the point. *See* Opp'n at 53–54. And certainly it is not the case that small nonprofits "have the financial wherewithal to keep their programs running" without their frozen funding, *see Department of Education v. California*, 2025 WL 1008354, at *1, as the evidence here shows[1] and Defendants have not disputed. Given the centrality of irreparable harm to both the stay and preliminary injunction analyses, this difference alone is enough to distinguish *California* from this case.

Second, the agency action at issue in *California* was far narrower—and appeared more contractual in nature—than the actions challenged here. *California* concerned the Department of Education's termination of 104 of 109 specific grants that had been awarded under the Teacher Quality Partnership and Supporting Effective Educator Development programs, and which the TRO required the Department to reinstate. *See California v. Dep't of Ed.*, No. 25-1244, 2025 WL 878431, at *1 (1st Cir. Mar. 21, 2025). Such a challenge might naturally involve considering the terms of those particular 104 grants and the individual termination decisions themselves. *See, e.g.*, Complaint ¶ 166, 183, *California v. Dep't of Ed.*, 25-cv-10548

---

[1] *See* Ex. L, ECF No. 26-3 ¶¶ 13–14; Ex. M, ECF No. 26-4 ¶¶ 8, 10–13; Ex. N, ECF No. 26-5 ¶¶ 9, 15–18, 20–21; Ex. O, ECF No. 26-6 ¶¶ 11, 15–18; Ex. P, ECF No. 26-7 ¶¶ 16, 18–20, 22, 26–30; Ex. Q, ECF No. 26-8 ¶¶ 8, 11, 14–15; Ex. R, ECF No. 26-9 ¶¶ 16–18; Ex. S, ECF No. 26-10 ¶¶ 7–9; Ex. T, ECF No. 26-11 ¶¶ 13–14, 21; Ex. U, ECF No. 26-12 ¶¶ 6–7; Ex. V, ECF No. 26-13 ¶¶ 10–13; Ex. Z, ECF No. 32-4 ¶ 10.

(D. Mass), ECF No. 1. Here, of course, Plaintiffs do not challenge individual terminations and do not seek grant-specific remedies. Rather, Plaintiffs here bring an APA challenge to programmatic policies to freeze all IRA and IIJA funding administered across numerous defendant agencies, without regard for the terms of any particular grant agreement.[2] Unlike in *California*, such a challenge cannot reasonably be characterized as a contract claim.[3] It is far more similar to the claims in *Bowen v. Massachusetts*, 487 U.S. 879 (1988), which the Supreme Court found were properly brought in district court notwithstanding that they would require the government to pay money, and *Department of State v. AIDS Vaccine Advocacy Coalition*, 145 S. Ct. 753 (2025), in which a majority of the Court recently declined to vacate a TRO concerning a broad funding freeze.

Third, the plaintiffs in *California* are quite differently situated to Plaintiffs here. The direct grantees in *California* were public instrumentalities of the plaintiff states, *see California v. Department of Education*, No. 25-cv-10548, 2025 WL 760825, at *1 n.2 (D. Mass. Mar. 10, 2025), which therefore could have brought suit regarding the relevant grants in the Court of Federal Claims. Here, by contrast, Plaintiffs by and large are not direct grant recipients and therefore could not, even if they wanted

---

[2] Indeed, it is not even clear that all of the grants and other funding programs affected by the programmatic freeze policies here would be considered "contracts" at all, as that determination requires an individualized assessment of each agreement's terms—which, of course, Defendants have neglected to consider in implementing the freezes. *See Thermalon Indus.., Ltd. v. United States*, 34 Fed. Cl. 411, 415, 419 (Fed. Cl. 1995).

[3] Nor have Defendants ever even suggested that Plaintiffs' claims concerning the issuance of Memo M-25-11 are contractual in nature and must be brought in the Court of Federal Claims.

4

to, pursue contractual claims against the federal government in the Court of Federal Claims. (The same is also true for numerous other members of Plaintiff National Council of Nonprofits.) They cannot be barred from pursuing their APA claims here because of a different forum not even available to them. *See, e.g.*, *Tootle v. Sec'y of Navy*, 446 F.3d 167, 176 (D.C. Cir. 2006) ("We categorically reject the suggestion that a federal district court can be deprived of jurisdiction by the Tucker Act when no jurisdiction lies in the Court of Federal Claims.").

Three Plaintiffs—Woonasquatucket River Watershed Council, Green Infrastructure Center, and Eastern Rhode Island Conservation District—are subgrantees, and would not have a cause of action in the Court of Federal Claims (were they even bringing a contractual claim, which they are are not). As the Federal Circuit has explained, "[i]t is a hornbook rule that, under ordinary government prime contracts, subcontractors do not have standing to sue the government under the Tucker Act [or] in the event of an alleged government breach." *Erickson Air Crane Co. of Washington, Inc. v. United States*, 731 F.2d 810, 813 (Fed. Cir. 1984); *see also Katz v. Cisneros*, 16 F.3d 1204, 1210 (Fed. Cir. 1994) ("Any express contract that might be invocable is between Hollywood Associates and Housing Allowance, not between Hollywood Associates and the United States, which is, of course, the sine qua non of jurisdiction in the Court of Federal Claims. Absent privity between Hollywood Associates and the government, there is no case."). Defendants themselves agree: "[I]t is far from clear that these entities have any rights to enforce against the United States or the grantor agencies." Opp'n at 29–30. The Supreme Court's

5

reasoning in *California* that if *those* plaintiffs "ultimately prevail, they can recover any wrongfully withheld funds through suit in an appropriate forum"—i.e., the Court of Federal Claims—is thus wholly inapplicable.

This reasoning applies with even greater force to NCN, which does not itself receive any of the grants at issue in this matter, either as a direct- or sub-grantee. NCN is a membership association that is proceeding in this case on behalf of its members, as is common in the APA context. *See generally Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199–201 (2023); *Housatonic River Initiative v. EPA, New England Region*, 75 F.4th 248, 264–66 (1st Cir. 2023). NCN clearly is not pursuing contract claims and cannot pursue its APA claims in the Court of Federal Claims. Because no adequate remedy for Plaintiffs can be secured in the Court of Federal Claims, this Court retains jurisdiction, and a preliminary injunction remains warranted. *See Katz*, 16 F.3d at 1209; *see also Aids Vaccine Advoc. Coal. v. Dep't of State*, Nos. 25-cv-400, 25-cv-402, 2025 WL 752378, at *9 n.7 (D.D.C. Mar. 10, 2025) (rejecting similar jurisdictional challenge and noting that, "even assuming Plaintiffs have some agreements that qualify as contracts within the [Contract Disputes Act] or Tucker Act, they also have agreements that would lack those alternative avenues and fall within the APA"), *appeal pending*, No. 25-5098 (D.C. Cir.).

Dated:  April 6, 2025                              Respectfully submitted,

                                                   /s/ Miriam Weizenbaum

        Miriam Weizenbaum (RI Bar No. 5182)
        DeLuca, Weizenbaum, Barry & Revens
        199 North Main Street
        Providence, RI 02903
        (401) 453-1500
        miriam@dwbrlaw.com

        Kevin E. Friedl* (Admitted only in New York; practice supervised by DC Bar members)
        Jessica Anne Morton* (DC Bar No. 1032316)
        Robin F. Thurston* (DC Bar No. 1531399)
        Skye L. Perryman* (DC Bar No. 984573)
        Democracy Forward Foundation
        P.O. Box 34553
        Washington, DC 20043
        (202) 448-9090
        kfriedl@democracyforward.org
        jmorton@democracyforward.org
        rthurston@democracyforward.org
        sperryman@democracyforward.org

        * admitted *pro hac vice*

## CERTIFICATE OF SERVICE

On April 6, 2025, I caused the foregoing and accompanying materials to be served on all Defendants through the CM/ECF system.

/s/ Miriam Weizenbaum
Miriam Weizenbaum
