UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| WOONASQUATUCKET RIVER WATERSHED COUNCIL, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DEPARTMENT OF AGRICULTURE, *et al.*,<br><br>Defendants. | Civil Action No. 1:25-cv-97 (MSM) |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' NOTICE REGARDING**
***DEPARTMENT OF EDUCATION v. CALIFORNIA***

As Plaintiffs note, *see* ECF No. 38, the Supreme Court recently issued a decision that bears directly on this case. Specifically, in *Department of Education v. California*, No. 24A910, 2025 WL 1008354 (Apr. 4, 2025) (per curiam), the Supreme Court granted the United States' application for a stay of the injunction, concluding that the government is "likely to succeed in showing the District Court lacked jurisdiction to order the payment of money under the APA." *Id*. at *1. Similarly here, this Court lacks jurisdiction under the APA to compel the continued disbursement of awarded funds, as Plaintiffs seek in their preliminary-injunction motion.

Like this case, *Department of Education* involves a challenge to the federal government's alleged refusal to continue paying money under particular grants. The district court had ordered (among other things):

> Defendants are temporarily enjoined from implementing, giving effect to, maintaining, or reinstating under a different name the termination of any previously awarded TQP or SEED grants for recipients in

-1-

> Plaintiff States, including but not limited to through the Termination Letter, Termination GAN, and any other agency actions implementing such terminations, such as suspension or withholding of any funds approved and obligated for the grants[.]

*California v. Dep't of Educ.*, No. 25-cv-10548, 2025 WL 760825, at *5 (D. Mass. Mar. 10, 2025). The First Circuit declined to stay that Order, reasoning that, although the Court of Federal Claims has jurisdiction over contractual claims, the plaintiff states were allowed to bring claims in federal district court under the Administrative Procedure Act (APA) because they were not "seek[ing] damages owed on a contract or compensation for past wrongs" but rather "want[ing] the Department to once again make available already-appropriated federal funds for existing grant recipients," *California v. Dep't of Educ.*, No. 25-1244, 2025 WL 878431, at *2 (1st Cir. Mar. 21, 2025). In this case, Plaintiffs relied on the First Circuit's decision to argue that they, too, were allowed to bring their APA claims in this Court. *See, e.g.*, Pls.' PI Reply (ECF No. 32) at 19-22.

On Friday, April 4, 2025—the day after the preliminary-injunction hearing in this case—the Supreme Court issued its decision granting the government's application to stay the injunctive order at issue in *Department of Education*, explaining that the government is "likely to succeed in showing the District Court lacked jurisdiction to order the payment of money under the APA." 2025 WL 1008354 at *1. Instead, the Supreme Court explained, suits seeking relief like that sought by the *Department of Education* plaintiffs likely belong in the Court of Federal Claims:

> The APA's waiver of sovereign immunity does not apply "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U. S. C. § 702. Nor does the waiver apply to

> claims seeking "money damages." *Ibid*. True, a district court's jurisdiction "is not barred by the possibility" that an order setting aside an agency's action may result in the disbursement of funds. *Bowen v. Massachusetts*, 487 U. S. 879, 910 (1988). But, as we have recognized, the APA's limited waiver of immunity does not extend to orders "to enforce a contractual obligation to pay money" along the lines of what the District Court ordered here. *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U. S. 204, 212 (2002). Instead, the Tucker Act grants the Court of Federal Claims jurisdiction over suits based on "any express or implied contract with the United States." 28 U. S. C. §1491(a)(1).

*Id.* In addition, the Supreme Court concluded that the remaining stay factors were met, because the federal government will be harmed if it is unable to "recover the grant funds once they are disbursed" while, conversely, grant recipients "can recover any wrongfully withheld funds through suit in an appropriate forum." *Id.*

Contrary to the arguments in Plaintiffs' notice, the Supreme Court's decision in *Department of Education* forecloses relief in this case. Indeed, Plaintiffs' efforts to portray *Department of Education* as "readily distinguishable," ECF No. 38 at 2, ring hollow given Plaintiffs' extensive reliance on the First Circuit's prior stay decision during the preliminary-injunction briefing and at the preliminary-injunction hearing. Just as in *Department of Education*, Plaintiffs here are seeking an order compelling the federal government to continue making monetary payments on grants that have been awarded. *See* ECF No. 37-1 (requesting an injunction against "freezing, halting, or pausing on a non-individualized basis the processing and payment of funding," and requiring defendants to "take immediate steps to resume the processing, disbursement, and payment of awarded funding"); *Dep't of Educ.*, 2025 WL 1008354, at *1 ("[A]s we have recognized, the APA's limited waiver of immunity does not extend to orders 'to enforce a contractual obligation to pay money' along the lines of what the

-3-

District Court ordered here."). Additionally, it is equally true in this case that the federal government will likely be unable to recover any grant funds once they are disbursed, while grant recipients can seek to recover any wrongfully withheld funds in the appropriate forum. Thus, the Supreme Court's decision forecloses Plaintiffs' request for preliminary relief here.

Seeking to avoid that conclusion, Plaintiffs note the Supreme Court's statement that "respondents would not suffer irreparable harm while the TRO is stayed" because they "have represented in this litigation that they have the financial wherewithal to keep their programs running," *Dep't of Educ.*, 2025 WL 1008354 at \*1, which Plaintiffs say is different from them. But Plaintiffs do not identify any reason why they (or their direct grantees) could not similarly "recover any wrongfully withheld funds through suit in an appropriate forum." *Id.* And Plaintiffs' assertions of harm here—which, again, fail to establish that any hypothetical delay in performing work under a grant would frustrate their ultimate grant work as whole, *see* ECF No. 31 at 53—are no greater than the claimed harms that the Supreme Court found insufficient in *Department of Education*. *See* 2025 WL 1008354, at \*9 (Jackson, J., dissenting) (asserting that there was "ample evidence that the loss of grants . . . will inflict significant harm on the Plaintiff States and their instrumentalities").

Plaintiffs also contend that "the agency action at issue in *California* was far narrower—and appeared more contractual in nature—than the actions challenged here." ECF No. 38 at 3. But the relief sought in both cases is materially identical, *i.e.*, an order to continue disbursing funds under awarded grant agreements. That is

exactly what the Supreme Court held was precluded in an APA suit. *Dep't of Educ.*, 2025 WL 1008354, at *1 ("[T]he APA's limited waiver of immunity does not extend to orders 'to enforce a contractual obligation to pay money' along the lines of what the District Court ordered here."). Such relief is precluded, even if there may be other ways to describe the underlying claims in the case. *Cf. United States Conf. of Cath. Bishops v. Dep't of State*, No. 25-cv-465, 2025 WL 763738, at *8 (D.D.C. Mar. 11, 2025) (even if court has jurisdiction over claims in complaint, that does not allow the court to provide expedited relief that would transgress jurisdictional limitations in the APA and the Tucker Act).

Moreover, Plaintiffs' claims do indeed "involve considering the terms of th[e] particular . . . grants" at issue. ECF No. 38 at 3. Part of Plaintiffs' challenge is that "Defendants have not followed the procedures set out in those governing regulations and have frozen grants in circumstances in which the regulations would not allow those grants to be terminated or suspended," which they say means "Defendants are acting contrary to law." Am. Compl. (ECF No. 30) ¶ 102. There is no way to examine that challenge without delving into the "governing regulations" for the purportedly "frozen grants," *id.*, as Plaintiffs' own filings suggest, *see* PI Mot. (ECF No. 26) at 27-28, PI Reply (ECF No. 32) at 31, and as the lengthy discussion of 2 C.F.R. § 200.340(a)(4) at the preliminary-injunction hearing further confirms.

Plaintiffs attempt to compare their case to *Department of State v. AIDS Vaccine Advocacy Coalition*, 145 S. Ct. 753 (2025), which they say involved "a majority of the Court recently declin[ing] to vacate a TRO concerning a broad funding freeze." ECF

No. 38 at 4.  Plaintiffs wholly decline to address the majority's actual reasoning in that case, which said nothing of the breadth of the purported funding freeze being challenged, and instead relied on the fact that "the deadline in the challenged order has now passed" and therefore the Supreme Court allowed the district court to "clarify what obligations the Government must fulfill to ensure compliance with the temporary restraining order, with due regard for the feasibility of any compliance timelines." 145 S. Ct. at 753.  The four dissenting Justices, however, made clear their view that the APA does not allow for "an injunction to enforce a contractual obligation to pay money past due," *id.* at 756 (Alito, J., dissenting from denial of application to vacate order), which is the very position that a majority of the Court adopted in *Department of Education*, 2025 WL 1008354, at *1.  Thus, the *AIDS Vaccine Advocacy Coalition* decision does not support Plaintiffs here.

Finally, Plaintiffs argue that they "are quite differently situated" from the "direct grantees" in *Department of Education* because those direct grantees "could have brought suit regarding the relevant grants in the Court of Federal Claims," whereas Plaintiffs here "by and large are not direct grant recipients and therefore could not, even if they wanted to, pursue contractual claims against the federal government in the Court of Federal Claims."  ECF No. 38 at 4-5.  In other words, despite Plaintiffs previously arguing that their status as subgrantees is legally irrelevant, *cf.* Pls.' Reply (ECF No. 32) at 17 n.5, they now try to leverage that fact into gaining *greater* rights to enforce grant agreements in court than the direct grantees themselves possess.  This argument cannot be correct.

For one thing, if Plaintiff subgrantees do not have rights to enforce under the Tucker Act—*i.e.*, the normal mode of resolving contractual claims against the government—it makes no sense for subgrantees to *gain* rights to bring APA suits in federal district court. "After all, Congress designed the APA so that it would 'not change existing limitations on specific relief . . . derived from statutes dealing with such matters as government contracts.'" *United States Conf. of Cath. Bishops*, 2025 WL 763738, at *7 n.6 (quoting H.R. Rep. 94-1656, at 13 (1976), as reprinted in 1976 U.S.C.C.A.N. 6121, 6133).

Indeed, Plaintiffs' own cited precedent, *see* ECF No. 38 at 5, confirms that the appropriate remedy for subgrantees is not to bring an APA claim in federal district court, but rather to pursue whatever remedies may be available to them under the relevant contractual agreement:

> Aggrieved subcontractors have the option of enforcing their subcontract rights against the prime contractor in appropriate proceedings, or of prosecuting a claim against the government through and in right of the prime contractor's contract, and with the prime contractor's consent and cooperation.

*Erickson Air Crane Co. of Washington v. United States*, 731 F.2d 810, 813 (Fed. Cir. 1984). Thus, the remedy here is for Plaintiffs to pursue relief in the appropriate forum against direct grantees or with the direct grantees' cooperation—not to bring a wholly separate APA suit in federal district court.

From a practical perspective, moreover, it makes little sense to allow subgrantees to sue without the involvement of the direct grantee. For example, Green Infrastructure Council operates as "subrecipients" of state grants. *See* ECF No. 26-5 ¶ 9. One of their projects involves "an initiative with the Mississippi

Forestry Commission." *Id.* ¶ 12. If the Mississippi Forestry Commission is not seeking to restore funding for the overall project, however, it makes little sense to allow a subgrantee to bring suit to restore funding for their particular piece of that project.[1]

Finally, the fact that a particular remedy may not be available in the Court of Federal Claims for a particular group of entities does not mean, as Plaintiffs suggest, that those entities must be able to pursue APA review. To the contrary, courts have routinely held that APA review is precluded even when an alternate remedial scheme may exclude certain entities or remedies. *See, e.g.*, *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345-48 (1984); *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 80 (D.C. Cir. 1985). And as noted, there appear to be alternate remedies available to subgrantees. *See Erickson Air Crane Co.*, 731 F.2d at 813. Plaintiffs have not shown that such remedies are wholly unavailable to them here, or that their direct grantees would not be able to obtain recourse through the Court of Federal Claims. Accordingly, Plaintiffs' status as subgrantees—and the fact that they have no rights to enforce directly against the United States—undermines their ability to bring suit, *see* ECF No. 31 at 29-30, rather than supports inferring a new right to bring APA challenges as subgrantees in federal district court.

---

[1] This particular project's funding appears to have now been restored, *see* ECF No. 32-2 ¶ 5, but it remains a useful example of why providing relief on behalf of subrecipients would not make sense.

In sum, the Supreme Court's recent decision in *Department of Education* forecloses relief in this case, and further supports denying Plaintiffs' motion for a preliminary injunction.

Dated: April 8, 2025                                  Respectfully submitted,

                                                                   YAAKOV M. ROTH
Acting Assistant Attorney General

ALEXANDER K. HAAS
Director

*/s/ Daniel Schwei*
DANIEL SCHWEI
Special Counsel (N.Y. Bar)
ANDREW F. FREIDAH
EITAN R. SIRKOVICH
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20530
Tel.:   (202) 305-8693
Fax:   (202) 616-8460
Email:   daniel.s.schwei@usdoj.gov

*Counsel for Defendants*

-9-

## CERTIFICATION OF SERVICE

    I hereby certify that on April 8, 2025, I electronically filed the within Certification with the Clerk of the United States District Court for the District of Rhode Island using the CM/ECF System, thereby serving it on all registered users in accordance with Federal Rule of Civil Procedure 5(b)(2)(E) and Local Rule Gen 305.

                                        /s/ *Daniel Schwei*
                                        Daniel Schwei