# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| WOONASQUATUCKET RIVER WATERSHED COUNCIL, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> DEPARTMENT OF AGRICULTURE, *et al.*, <br><br> *Defendants*. | Case No. 1:25-cv-00097-MSM-PAS |

## REPLY REGARDING DEPARTMENT OF EDUCATION v. CALIFORNIA

Contrary to Defendants' claims, the Supreme Court's case-specific stay order in *Department of Education v. California*, No. 24A910, 2025 WL 1008354 (U.S. Apr. 4, 2025), does not foreclose the preliminary relief Plaintiffs seek here.

First, Defendants fail to refute Plaintiffs' prior showing that the facts on irreparable injury are far different in this case than they were in *California*. Defendants do not dispute that Plaintiffs, their members, and other nonprofits—in marked contrast to the state plaintiffs in *California*—do *not* "have the financial wherewithal to keep their programs running" if federal funding stays frozen. *See id.* at *1. Defendants also do not dispute Plaintiffs' evidence documenting the severe irreparable injuries that will result if Defendants' freeze policies continue, including injuries from the delay in payment itself.

Defendants instead rely on the majority's statement in *California* that the plaintiff states there "can recover any wrongfully withheld funds through suit in an

1

appropriate forum." *Id.*; ECF No. 41, at 3–4. That reliance is unsound for multiple reasons. It overlooks that, as explained below, most Plaintiffs here in fact could not bring contract actions to recover wrongfully withheld funds. It omits the key premise—that the plaintiff states can keep their programs running in the meantime—that supported the Court's conclusion:

> [T]he Government compellingly argues that respondents would not suffer irreparable harm while the TRO is stayed. Respondents have represented in this litigation that they have the financial wherewithal to keep their programs running. *So*, if respondents ultimately prevail, they can recover any wrongfully withheld funds through suit in an appropriate forum.

*Id.* (emphasis added). And it ignores the reality—amply supported by the record here—that Plaintiffs cannot do the same.

This conclusion is clear from the nature of the injuries Plaintiffs have documented. Those injuries include direct interference with Plaintiffs' core missions, such as by preventing them from carrying out important efforts to ameliorate health, safety, and environmental harms. They also include unavoidable staff layoffs and shuttering of key programs, disruption to ongoing scientific and environmental research, and loss of trust in the communities these nonprofits serve, among other harms. None of those injuries are prevented or remediated by the hypothetical possibility of "recover[ing] any wrongfully withheld funds" at some future date. Defendants' response to these injuries is to ignore them.[1]

---

[1] Defendants also point to one of the dissents in *California*, ECF No. 41, at 4, but the correct place to look to understand the basis of the majority's decision is the majority's decision itself. *Cf. Bondi v. VanDerStok*, 604 U.S. ----, 2025 WL 906503, at *13 (U.S. Mar. 26, 2025) (Sotomayor, J., concurring) ("The Court's opinion speaks for itself on

Second, Defendants can't overcome Plaintiffs' showing that the APA claims in this case—which challenge sweeping freeze policies across multiple agencies, as well as the issuance of OMB Memo M-25-11—are far afield from the much narrower challenge to individual grant terminations at issue in *California*. While the *California* majority concluded that the claims over individual terminations were, in essence, contract claims, the same plainly is not true of Plaintiffs' challenges to the broad freeze policies and to Memo M-25-11. Of note, resolving these challenges requires no individualized review of the grant terms—and does not even require that Defendants violated the terms of any grant agreement—making it impossible to conclude that this is in essence a contract case. Those critical differences, among others, defeat Defendants' efforts to paint the two cases as identical.

Defendants' main response is to insist again that "Plaintiffs' claims do indeed involve considering the terms of th[e] particular . . . grants at issue." *Id.* at 5 (quotation marks omitted). But Defendants fail to back up that claim, and decline to point to the terms of any particular grant agreement they believe are relevant. (Nor could they, when the hallmark of the freezes at issue is that Defendants failed to make any such individualized assessment.) Instead, Defendants skip to a discussion of the *regulations* that apply to federal grants. *Id.* The Court should reject that clumsy sleight of hand. As Plaintiffs have previously explained, the main relevance of the regulations is in showing that agencies must consider the terms of particular grants before taking action on those grants, which Defendants here entirely failed to do.

---

that point and others. I encourage readers to go to the source, rather than rely on dissents, to understand what the Court holds.").

3

Neither that argument, nor any of Plaintiffs' other claims, require the Court to consider the terms of any particular grant agreement. *Contra id.* For this reason, too, this case is readily distinguishable from *California*. *See Aids Vaccine Advoc. Coal. v. Dep't of State*, No. 25-cv-00400, 2025 WL 752378, at *9 (D.D.C. Mar. 10, 2025) ("[I]t would be quite extraordinary to consider Plaintiffs' claims to sound in breach of contract when they do not at all depend on whether the terms of particular awards were breached.").

Third, Defendants put forward the remarkable (and unsubstantiated) position that the Tucker Act strips this Court of jurisdiction whether or not it even applies to Plaintiffs. Defendants acknowledge that Plaintiffs—most of whom have no contract claim to bring against the federal government, even if they wanted to—are differently situated than the state plaintiffs in *California*, but then suggest it naturally follows that those Plaintiffs have no recourse against the government at all. ECF No. 41, at 6–8. Defendants fail to overcome (or even meaningfully engage with) the strong presumption in favor of judicial review that demands otherwise.

Nor do Plaintiffs somehow illegitimately "gain rights" if Defendants' unlawful conduct is subject to ordinary judicial review under the APA. *See id.* at 7 (emphasis omitted). Defendants get the analysis backward. "The Administrative Procedure Act creates a basic presumption of judicial review [for] one suffering legal wrong because of agency action," and the Supreme Court "has . . . long applied a strong presumption favoring judicial review of administrative action." *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 22 (2018) (quotation marks omitted). Judicial review

4

therefore is the baseline to which Plaintiffs are presumptively entitled. That presumption is rebutted "only if the relevant statute precludes review, 5 U.S.C. § 701(a)(1), or if the action is 'committed to agency discretion by law,' § 701(a)(2)." *Id.*[2] "To overcome this presumption, the government bears a 'heavy burden.'" *Council for Urological Interests v. Sebelius*, 668 F.3d 704, 709 (D.C. Cir. 2011) (quoting *Bowen v. Michigan Acad. of Fam. Physicians*, 476 U.S. 667, 672 (1986)). Defendants do not come close to carrying that burden here.

Defendants appear to contend that the APA claims of subgrantees or of the National Council of Nonprofits are precluded from this Court's review by the Tucker Act. But that contention is wrong, because they have no contract with the federal government that could implicate the Tucker Act in the first place. Defendants offer no argument at all with respect to associations like NCN. As for subgrantees, any contract claims they might bring against direct grantees would not fall under the Tucker Act or need to be filed in the Court of Federal Claims, making potential subgrantee litigation against direct grantees irrelevant to whether the Tucker Act divests this Court of jurisdiction. And even if Defendants' analysis were correct (and it isn't) they provide no explanation for how a lawsuit against a direct grantee (which is just as much a victim of the agencies' unlawful freezes) could possibly provide adequate relief for the irreparable, ongoing injuries Plaintiffs have evidenced. Defendants' assertions about what would make the most "sense" for subgrantees, *see*

---

[2] Plaintiffs have previously explained why Defendants' conduct does not fall within the second of these exceptions, *see* Reply at 22–23, and address only the first here.

ECF No. 41, at 7, are also not relevant for determining whether the strong presumption of APA review has been overcome here.

Finally, Defendants' reliance on *Block v. Community Nutrition Institute*, 467 U.S. 340 (1984), and *Ingersoll-Rand Co. v. United States*, 780 F.2d 74 (D.C. Cir. 1985), gets them nowhere. *Block* found that APA claims were impliedly precluded where they would disrupt the "complex and delicate administrative scheme" that Congress had created for the review of certain orders concerning milk pricing. 467 U.S. at 347–48. No similar scheme exists here. And *Ingersoll*, in analyzing one specific contract termination under the Contract Disputes Act—a statute Defendants have not invoked here, as it addresses federal procurement—merely noted that the CDA "includes a deliberate limitation on certain types of remedies," and can therefore apply even if some remedies may not be available. 780 F.2d at 80. Here, not even Defendants have suggested that the Court of Federal Claims can resolve (even partially) Plaintiffs' broad challenges to Defendants' efforts to nullify the IRA and IIJA by withholding that funding indefinitely.

Dated:  April 9, 2025   Respectfully submitted,

/s/ Miriam Weizenbaum

Miriam Weizenbaum (RI Bar No. 5182)
DeLuca, Weizenbaum, Barry & Revens
199 North Main Street
Providence, RI 02903
(401) 453-1500
miriam@dwbrlaw.com

Kevin E. Friedl* (Admitted only in New York;

6

practice supervised by DC Bar members)
Jessica Anne Morton* (DC Bar No. 1032316)
Robin F. Thurston* (DC Bar No. 1531399)
Skye L. Perryman* (DC Bar No. 984573)
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
kfriedl@democracyforward.org
jmorton@democracyforward.org
rthurston@democracyforward.org
sperryman@democracyforward.org

* admitted *pro hac vice*

## CERTIFICATE OF SERVICE

On April 9, 2025, I caused the foregoing and accompanying materials to be served on all Defendants through the CM/ECF system.

/s/ Miriam Weizenbaum
Miriam Weizenbaum
