IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| WOONASQUATUCKET RIVER WATERSHED COUNCIL, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> DEPARTMENT OF AGRICULTURE, *et al.*, <br><br> *Defendants*. | Case No. 1:25-cv-00097-MSM-PAS |

# **PLAINTIFFS' STATUS REPORT**

Pursuant to the Court's April 21 order, Plaintiffs submit this report regarding Defendants' compliance with the Court's preliminary injunction order.

Defendants remain substantially out of compliance with the Court's order. All of Plaintiffs' and their declarants' grants that were inaccessible as of the April 21 status conference remain inaccessible now. Plaintiffs' counsel have also received numerous reports from other grantees that their IRA- or IIJA-funded awards remain inaccessible. And those reports—plus a recent government filing in a different grants-related case—strongly suggest that at least certain Defendants, in particular EPA and USDA, appear to be concentrating not on unfreezing grants but on moving straight to terminating them, in an apparent effort to avoid allowing grantees to regain access for even a short period of time.

*Status of Plaintiffs and Declarants*

As detailed below, to the best of counsel's knowledge, all of Plaintiffs' and declarants' grants that were inaccessible at the time of the April 21 status conference remain inaccessible. Indeed, all of Plaintiffs' and declarants' grants that were inaccessible at the time of the Court's preliminary injunction order remain inaccessible, with one exception: a grant from the National Park Service held by the declarant in Plaintiffs' Exhibit R, ECF No. 26-9. That grantee discovered on April 18 that it had regained access to the grant.

- Plaintiff Childhood Lead Action Project is still waiting for its funds under an EPA grant to be unfrozen. *See* Ex. P, ECF No. 26-7 ¶¶ 7, 12–15. As of the morning of April 23, nothing appears to have changed since CLAP submitted its declaration in this case: the grant is missing from the ASAP payment portal, and EPA has not communicated any reason for the freeze to CLAP. *See id.* ¶ 15.
- Plaintiff Eastern Rhode Island Conservation District has "two major grants"—one from EPA and one from USDA, *see* Ex. Q, ECF No. 26-8 ¶¶ 8–9, 12—and is still not able to access either. As to the EPA grant (for which ERICD is a subgrantee), as of the morning of April 23, nothing has changed since ERICD submitted its declaration. As to the USDA grant (for which ERICD is also a subgrantee), the direct grantee told ERICD they had been informed by USDA that back pay for expenses previously incurred will be reimbursed, but as of the morning of

2

April 23, ERICD has not yet received that money. And USDA has not given any word to the direct grantee as to any approval to continue work under the grant on a forward-looking basis, although the grant is supposed to run through 2028.

- Plaintiff Codman Square Neighborhood Development Corporation finally received a response from HUD about its grant at 5:37 pm on April 22. *See* Ex. 2. Codman Square has been asking HUD for months to move the closing process forward. *See* Ex. L, ECF No. 26-3 ¶¶ 9–11. During all that time, HUD did not indicate it was waiting for Codman Square to complete any next steps. In its April 22 message, HUD appeared to acknowledge that the ball had been in its court the entire time, informing Codman Square that "[w]e will have the award moved to the next stage in the Greenlight portal on Wednesday, April 23." Ex. 2. HUD further stated that, after it had done so, Codman Square would for the first time be able to upload further documents in order to continue the processing of the funding. This morning (April 23), HUD informed Codman Square that it had moved the award to the next stage in the portal and that Codman Square could now begin uploading documents, which Codman Square has already begun to do.

- Plaintiff Woonasquatucket River Watershed Council previously reported that it had received notice on March 20 that the direct grantee

3

through which it receives USDA grant funds was able to access its grant funding. *See* Ex. W, ECF No. 32-1 ¶ 4.

- Plaintiff Green Infrastructure Center previously reported that in late March, it received notice that several states through which it receives USDA grant funds had been able to resume access to their grant funding. *See* Ex. X, ECF No. 32-2 ¶¶ 5, 7, 8, 10.
- Plaintiff National Council of Nonprofits had submitted several member declarations:
  - The declarant from Exhibits O and Z, which works in watershed protection and restoration, has frozen grants from both USDA and Interior. *See* Ex. O, ECF No. 26-6 ¶¶ 12–13; Ex. Z, ECF No. 32-4 ¶¶ 3, 8. As to the USDA grant (for which the declarant's organization is a subgrantee), as of the afternoon of April 22, they had received no indication that the funds were unfrozen. And as to the Interior grant, as of the afternoon of April 22, the grant was still frozen—and the ASAP portal still showed the "Default Action" as "Hold" and the "Reason for Review" as "BIL/IRA HOLD."
  - The declarant from Exhibit S, which engages youth and young adults in programs to improve access to outdoor recreation, among other goals, has frozen grants from Interior. ECF No. 26-10 ¶ 4. As of March 17, approximately $621,000 in federal grant

4

money from Interior was frozen. Although some of the funds were unfrozen before the Court issued its order, as of the morning of April 23, approximately $412,000 of that grant funding remained frozen. This declarant also reports that it has not received any notice that the frozen federal funds its partners were planning to use had become available, so the projects it had planned in collaboration with those partners remain on hold.

- The declarant from Exhibit V, which promotes a sustainable food system in Rhode Island, has a grant from EPA that has remained frozen since early March. ECF No. 26-13 ¶ 9. As of the morning of April 23, the grant remains frozen in the ASAP portal, with the account listed as "Suspended," and the declarant's organization has received no further communication from EPA regarding the grant (other than the general e-mail notification of the Court's order).

- The declarant from Exhibit R, which studies and protects giant sequoias, has a grant funded by Interior. ECF No. 26-9 ¶ 5, 11–12. As of April 18, the declarant was able to put in a payment request on ASAP, and as of April 21, those funds were transferred to the organization's account.

- The declarant from Exhibit T, which ran a weatherization program funded by the Department of Energy, previously

5

> reported that on March 25, they were told that the state through which they are a subgrantee had regained access to its grant funding. *See* Ex. Y, ECF No. 32-3 ¶ 4. On April 1, the declarant received its funds.

*Other Relevant Developments*

Plaintiffs' counsel have been inundated with reports from other grantees that their IRA- or IIJA-funded awards remain inaccessible—or worse. Dozens of EPA grantees have shared word that their grants remain frozen; at least one shared that they have e-mailed EPA five times since this Court's order (and 31 times before the order) to ask for an update, and received no response. Numerous NCN members (which have asked to remain confidential) have reported that funding freezes remain from EPA and Interior, affecting projects ranging from reducing flood risk on an important transportation corridor to helping renovate homes contaminated with asbestos and lead. And NCN member Institute for Sustainable Communities has reported that, after ISC submitted to EPA a request to unfreeze its grantmaking program—citing this Court's order—EPA terminated a $12 million tranche of that funding on the afternoon of April 22.

Just yesterday, the government acknowledged in a filing in another grant-related case that it continues to withhold IRA and IIJA funding that this Court ordered unfrozen. In a status report in that case, *The Sustainability Institute v. Trump*, No. 2:25-cv-02152 (D.S.C.), the government conceded (euphemistically) that USDA's and EPA's "compliance with the injunctive relief issued in *Woonasquatucket*

is ongoing." Ex. 1, at 1. The government stated without relevant elaboration that at USDA, "grant management teams are working on implementation." *Id.* at 2. And it stated that EPA "is disbursing some IRA/IIJA funds" *but has also decided* that it will continue to pause "some IRA/IIJA-funded grants" in order to carry out "independent, individualized terminations." *Id.* In a chart attached to its filing, the government identified one grant (out of 38) that it was still working to un-freeze ("Resources for Resilient Farms")—and 16 that USDA and EPA had either terminated or were in the process of terminating. *Id.* Ex. A.

\* \* \*

Although Defendants have made general representations that they are working to unlock at least some of this funding, the lack of discernible progress since the last status conference is concerning. And Defendants so far have offered few specifics on what the agencies are doing, how far along in the process they are, what grants have been unfrozen so far, and what if anything is preventing Defendants from being in compliance with an order the Court entered more than a week ago. If Defendants remain out of compliance, Plaintiffs respectfully submit that further intervention by the Court would be warranted, including for example requiring testimony from agency officials as to the specifics of their compliance efforts or requiring daily reports from each agency providing some quantifiable metric of progress, such as the percentage of grants that have been unfrozen or "backlogged" payments approved.

Even more troubling, at least some Defendants appear to be expending their time and energy not on unfreezing grants covered by the Court's order, but instead on beginning the process of termination. Given Defendants' capacity to undertake these terminations, there is no reason to doubt their capacity to promptly comply with the Court's order. Nor is it clear that these terminations themselves do not directly violate the preliminary injunction, to the extent they are simply another means of "halting . . . on a non-individualized basis the processing and payment of funding that (1) was appropriated under the Inflation Reduction Act or the Infrastructure Investment and Jobs Act and (2) has already been awarded." Mem. & Order at 61. Plaintiffs respectfully submit that this approach is incompatible with the Court's Order, which enjoined exactly this "freeze first, ask questions later" approach, and therefore requires unfreezing *before* undertaking the individualized assessment that might justify termination or other action.

The government's representations so far also provide no means to test their assertions—for example, in the chart they filed in *The Sustainability Institute*—that certain grants were previously identified (i.e., before the Court's preliminary injunction) as targets to be paused for some other individualized reason. In fact, the only other reason given in that chart for freezing funding (that the program was "previously identified on DEIA list") is clearly *not* an individualized basis, but instead simply describes another sweeping category of grants, like those that are funded by appropriations in the IRA or IIJA. Thus, if Defendants intend to argue now—despite not having raised this issue in their preliminary injunction briefing or at the hearing

8

on that motion—that they may continue to withhold IRA and IIJA funding on some other basis, Defendants should provide evidence to support such withholding. That evidence should at a minimum establish what determinations Defendants made, when they were made, and on what bases. If Defendants fail to do so while continuing to withhold significant amounts of funding for claimed but not demonstrated individualized reasons, it may be appropriate for the Court to authorize discovery into Defendants' compliance, or lack thereof, with the preliminary injunction.

Dated:  April 23, 2025                    Respectfully submitted,

/s/ Miriam Weizenbaum

Miriam Weizenbaum (RI Bar No. 5182)
DeLuca, Weizenbaum, Barry & Revens
199 North Main Street
Providence, RI 02903
(401) 453-1500
miriam@dwbrlaw.com

Kevin E. Friedl* (Admitted only in New York; practice supervised by DC Bar members)
Jessica Anne Morton* (DC Bar No. 1032316)
Robin F. Thurston* (DC Bar No. 1531399)
Skye L. Perryman* (DC Bar No. 984573)
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
kfriedl@democracyforward.org
jmorton@democracyforward.org
rthurston@democracyforward.org
sperryman@democracyforward.org

* admitted *pro hac vice*

## CERTIFICATE OF SERVICE

On April 23, 2025, I caused the foregoing and accompanying materials to be served on all Defendants through the CM/ECF system.

<u>/s/ Miriam Weizenbaum</u>
Miriam Weizenbaum