## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| WOONASQUATUCKET RIVER WATERSHED COUNCIL, *et al.*, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | )    C.A. No. 1:25-cv-00097-MSM-PAS |
| U.S. DEPARTMENT OF AGRICULTURE, *et al.*, | ) ) ) ) |
| Defendants. | ) ) |

## ORDER

Yesterday, the Court held an on-the-record status conference—the second already this week—regarding the Government's compliance with the Court's preliminary injunction order. At the end, the Court gave both parties several issues to be addressed in status reports due tomorrow—Friday, April 25, 2025—at 12:00pm noon, ahead of another on-the-record status conference at 1:00pm. Below, the Court reiterates those issues for the parties' reference.

## I.    U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

The parties seem to agree that HUD is complying with the Court's order. To start, the parties agree that HUD's notice has been sufficient. And based on the Government's statements, the parties agree that the Green and Resilient Retrofit Program is the only program that HUD administers dealing with IRA or IIJA funding.

HUD and the Codman Square Neighborhood Development Corporation have resumed communications after the Court's order, and it is the Court's understanding that HUD "informed Codman Square that it had moved the award to the next stage in the portal and that Codman Square could now begin uploading documents, which Codman Square has already begun to do." (ECF No. 50 at 3.) The Court instructed the Nonprofits' counsel to tell their clients that are similarly situated to Codman Square to reach out to HUD to resume processing of their awards. If those clients are unsuccessful in doing so, the Nonprofits should let the Court know.

Unless there are any further developments, the parties need not address HUD's compliance in their status updates for tomorrow.

## II.     U.S. DEPARTMENT OF ENERGY

The parties also seem to agree that Energy is complying with the Court's order. First, they agree that Energy's notice on the payment portal is sufficient.

The Nonprofits did not identify any grantees whose funds were still frozen. The Government represented that, since entry of the Court's preliminary injunction, "Energy has made payments of more than $50 million in IIJA-appropriated grants, and more than $56 million in IRA-appropriated grants." (ECF No. 51 at 3.) And following the Nonprofits' question about conditional awards, the Government stated that Energy is again processing conditional awards in the ordinary course.

Unless there are any further developments, the parties need not address Energy's compliance in their status updates for tomorrow.

III.    U.S. DEPARTMENT OF THE INTERIOR

The Court recognizes that Interior has posted written notice on its agency website.  To the extent that Interior can explain whether notice can be posted on the ASAP portal or other grant platforms, the Court would welcome that information.

Everyone agrees, however, that the central issue is compliance.  The Nonprofits explained that only one group's funding has been fully unfrozen since the Order and that the "BIL/IRA hold" (that this Court noted in its preliminary injunction decision as an easy way to identify agency action (*see* ECF No. 45 at 26)) remains in place.  (ECF No. 50 at 4–5.)

According to the Government, Interior has identified approximately 464 grants "covered by the Order" and it is actively in the process of unfreezing them. (ECF No. 51 at 4).  But when asked, the Government could not identify how many of those 464 had already been unfrozen or why—in light of the Court's suggestion, based on the record, that the grants were frozen all at once—the grants could not be unfrozen all at once.  Nor could the Government state with certainty whether those 464 grants are all of Interior's grants funded by the IIJA or the IRA, following the Nonprofits' question about it.  The Government estimated that fully unfreezing the remaining grants would likely take another 24 to 36 hours (after the conference), but it could not commit to that timeframe as a certainty.

As discussed, the Government shall provide a sworn declaration from an Interior agency official as part of its status update due at noontime tomorrow.  That

testimony should provide clarification for the uncertainties described above and identified during yesterday's conference.

If the Court is not satisfied with the updates that Interior provides tomorrow, the Government should be prepared (1) to bring a knowledgeable witness for live testimony via Zoom at another status conference next week—likely next Tuesday, April 29, at a time yet to be determined—and (2) to provide a log of all Interior's IIJA and IRA grants—both frozen and unfrozen—for the Court's review.[1]

The Court hesitates to make more work for the Government. And if the parties can suggest less demanding measures to ensure compliance with the Court's order, the Court would welcome them. But if compliance is incomplete two weeks after the Court issued its order, Interior has left the Court no choice but to take a more involved approach—particularly in light of how quickly Interior froze the funds.

## IV.  U.S. DEPARTMENT OF AGRICULTURE

The Court believes that the Government's description of USDA's attempts to comply with notice requirements (described at ECF No. 51 at 4) are reasonable and USDA should continue to follow the steps laid out in that update. The Government's status report on Friday should address any further progress.

Again, the main issue is compliance. The Government did not provide much here at all: any estimates for how many IRA and IIJA grants that USDA administers,

---

[1] To be clear: the Court is not requiring the measures described in this paragraph as part of the Government's status update for tomorrow. It is flagging these steps as potentially necessary measures for continued delays in full compliance. The Court will lay out what it sees as the appropriate next steps after reviewing the parties' updates tomorrow.

a timeframe for when the funds will be released, or how much has been released since this Court's order. That total lack of information is concerning—particularly more than a week after the Court issued its order.

The Government was able to suggest that a subset of USDA's IRA and IIJA grants that remain frozen are only frozen "based on a pre-existing determination (from before entry of the preliminary injunction) to pause that funding on an individualized basis for some other, independent reason (apart from the fact that it was appropriated under the IRA/IIJA)." (ECF No. 51 at 5.) The Court agrees with that interpretation of its order—that individual grants could possibly remain frozen based on those terms—but USDA did not explain how large that subset was. All that is to say: more information from USDA is necessary.

So, as discussed, the Government shall provide a sworn declaration from a USDA agency official as part of its status update due at noontime tomorrow. That testimony should provide clarification for the uncertainties and questions described above and identified during the conference.

As with Interior, if the Court is not satisfied with the explanations that USDA provides tomorrow, the Government should be prepared (1) to bring a knowledgeable witness for live testimony via Zoom at another status conference next week—likely next Tuesday, April 29, at a time yet to be determined—and (2) to provide a log of all USDA's IIJA and IRA grants—both frozen and unfrozen—for the Court's review.[2]

---

[2] The same caveats as described in Footnote 1 apply here.

Again, the Court hesitates to make more work for the Government. And if the parties can suggest less demanding measures to ensure compliance with the Court's order, the Court would welcome them. But if compliance is not complete two weeks after the Court issued its order, USDA has left the Court no choice but to take a more involved approach—particularly in light of how quickly USDA froze the funds.

## V.    U.S. ENVIRONMENTAL PROTECTION AGENCY

Finally, the Nonprofits have not flagged any issues with EPA's notice.

Again, compliance is where the parties diverge. The Nonprofits identified several grants still frozen. (ECF No. 50 at 2–6.) The Government provided a declaration from Daniel Coogan, the Deputy Assistant Administrator for Infrastructure and Extramural Resources in the Office of Mission Support at EPA. (ECF No. 51-1.) As the Court reads his declaration, Mr. Coogan states that most of the EPA's IIJA and IRA grants are unfrozen and that the only grants still frozen are about 800 that EPA had— before the preliminary injunction order—decided to terminate.[3] *Id.* ¶¶ 5–7. Even so, many grantees had not yet received notice of the termination. *Id.* ¶ 5.

The Nonprofits then protested the terminations on two grounds. First, these terminations are inconsistent with 2 C.F.R. § 200.341(a). Second, and more substantively, the Nonprofits disagreed with Mr. Coogan that these roughly 800 terminations were individualized; they argued instead that the terminations violated

---

[3] The parties are invited to confirm or correct the Court's understanding of the funds that EPA has kept frozen.

paragraph 2 of the Court's order. The Nonprofits argued that EPA should, at minimum, be required to "show its work" before the terminations can proceed.

The Court recognizes that the 800 terminations were a new development for the Nonprofits as of yesterday. To the extent that the Nonprofits believe these terminations violate paragraph 2 of the Court's order, the Court directs the Nonprofits to briefly explain why in their update for tomorrow.[4] The Court needs to assess whether these terminations still fall within the scope of this case based on its order. If needed, the Court will direct both parties to provide additional briefing on the question due next week.

The Nonprofits are also directed to lay out, with as much specificity as possible, what steps EPA should take to "show its work" regarding the terminations. If, for instance, the Nonprofits seek discovery, then identifying the proposed scope and methods would greatly aid the Court. The Court will then assess these steps and determine what is necessary.

## VI. CONCLUSION

As discussed at the conference, the parties are directed to address all issues described above by 12:00pm noon tomorrow—Friday, April 25—for a 1:00pm conference. The Court requests that the parties structure their updates as this order does—organizing issues using the agencies as headings.

---

[4] To the extent that the Government can offer a written explanation for why the terminations do not violate the Court's order, the Court welcomes them, but the Government should prioritize Interior and USDA's compliance issues. The Government will have the chance to address the arguments at tomorrow's hearing.

IT IS SO ORDERED.

Mary S. McElroy,
United States District Judge

Date: April 24, 2025