IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

WOONASQUATUCKET RIVER
WATERSHED COUNCIL, *et al.*,

*Plaintiffs*,

v.

DEPARTMENT OF
AGRICULTURE, *et al.*,

*Defendants*.

Case No. 1:25-cv-00097-MSM-PAS

## PLAINTIFFS' SECOND STATUS REPORT

Pursuant to the Court's orders of April 23 and 24, Plaintiffs submit this report regarding Defendants' compliance with the preliminary injunction.

### I.   U.S. DEPARTMENT OF THE INTERIOR

*Status of Plaintiffs and Declarants*

As of the evening of April 24, the declarant from Exhibit S (which engages youth and young adults in programs to improve access to outdoor recreation) reports that the ASAP portal is now showing that its funding is open. The declarant has not yet received the funds.

As of April 24, the declarant from Exhibits O and Z (which works in watershed protection and restoration) reports that its grant status has been updated to "Queued to be sent to ACH," that the ASAP portal no longer lists any "Default Action" or "Reason for Review," and that "BIL/IRA HOLD" no longer appears on the portal. The declarant has not yet received the funds.

1

*Outstanding Issues*

Plaintiffs note that Defendants' most recent status report as to Interior refers to "the process of unpausing IRA/IIJA *grants* subject to the Court's order." ECF No. 51, at 4 (emphasis added). The Court's order, of course, refers to "funding," which is broader than grants and also includes cooperative agreements, loans, and other forms of funding. Plaintiffs respectfully submit that it would be helpful for Defendants to clarify their understanding of the Court's order and whether Interior has any already-awarded funding appropriated under the IRA or IIJA that is not captured in the universe of the approximately 464 grants it addresses.

Plaintiffs agree that the next steps the Court has proposed in its most recent order (if outstanding questions remain) are appropriate here. *See* ECF No 52, at 4. Plaintiffs respectfully suggest that, should the Court find it necessary to enter such an order, the "log of all Interior's IIJA and IRA grants—both frozen and unfrozen" should include all funding that falls within the Court's order, and not grants alone, unless Interior is able to confirm that no already-awarded IIJA and IRA funding has been frozen other than the approximately 464 grants it has identified.

Plaintiffs further respectfully submit that, to the extent Interior intends to maintain freezes on particular funds based on some pre-existing determination that the funds should be frozen for a different, individualized reason (besides IRA/IIJA funding), the agency should provide documentation contemporaneous with the decision to freeze—i.e., not a post hoc, blanket declaration—sufficient to establish the date the decision was made, the funding to which it applies, and the individualized,

2

alternative basis for freezing the funds. Any funding for which the agency is unable to produce such documentation should be expeditiously unfrozen in compliance with the Court's preliminary injunction.

## II. U.S. DEPARTMENT OF AGRICULTURE

*Status of Plaintiffs and Declarants*

Plaintiff Eastern Rhode Island Conservation District has now received reimbursement for its expenses previously incurred under its subgrant. And on April 24, ERICD finally received approval to continue work under its grant on a forward-looking basis. *See* Ex. 1. That notification from USDA, however, warned (in bold) that "[t]his situation remains fluid," and recommended that grantees continue to communicate with points of contact before making large transactions. *Id.*

On April 24, the declarant from Exhibits O and Z reported that the grantee through which it receives a subgrant had received notification from USDA's Natural Resources Conservation Service that it "can move forward with . . . IRA funded existing agreements." As of the evening of April 24, the declarant had not yet received funds, nor, to its knowledge, had the direct grantee.

As previously reported, Plaintiffs Woonasquatucket River Watershed Council and Green Infrastructure Center have previously had their grant funds unfrozen.

*Outstanding Issues*

Although USDA seems to have acknowledged—finally—that IRA grant payments on "existing agreements" can now be processed, its communications with awardees raise additional questions and concerns about compliance. *See* Ex. 1.

3

First, the communications suggest that it refers only to "existing agreements," and not, as the Court has ordered, to "already-awarded funding." For example, USDA stated that "IRA-funded RCPP projects that **do not yet have an executed agreement** . . . **in place should remain paused**." *Id.* (emphasis in original). As the parties have discussed at length in the HUD context, this Court's order also covers *processing* of awarded funds; these notifications do not reflect that requirement.

Second, Plaintiffs find it concerning that the USDA employee who conveyed the message that "because of a preliminary injunction we have received approvals to resume IRA and IIJA Payments" also stated in that email—on April 24—that she had only "received additional guidance" to that effect "[y]esterday"—i.e., April 23. *Id.* USDA has offered no explanation to Plaintiffs or to this Court why it apparently took more than a week from this Court's order for "NHQ" (presumably National Headquarters) to provide this "guidance" to its program officers.

Additionally, as with Interior above, USDA's previous status report stated that its "leadership has instructed that IRA and IIJA-appropriated *grants* should be unfrozen." ECF No. 51, at 5 (emphasis added). Again, as with Interior, it would be helpful for USDA to clarify its understanding that the Court's order addressing "funding" extends beyond grants.

Plaintiffs agree that the next steps the Court has proposed in its most recent order (if outstanding questions remain) are appropriate here. *See* ECF No 52, at 4. Plaintiffs respectfully suggest that, should the Court find it necessary to enter such an order, the "log of all USDA's IIJA and IRA grants—both frozen and unfrozen"

4

should include all funding that falls within the Court's order, and not grants alone, as well as this new category of projects that have been awarded but "do not yet have executed agreements." Ex. 1. And again, as with Interior, to the extent that USDA intends to continue freezing some IRA- or IIJA-appropriated funds, Plaintiffs respectfully submit that USDA should provide documentation contemporaneous with the decision to freeze—i.e., not a post hoc, blanket declaration—sufficient to establish the date the decision was made, the funding to which it applies, and the individualized, alternative basis for freezing the funds. Any funding for which the agency is unable to produce such documentation should be expeditiously unfrozen in compliance with the Court's preliminary injunction.

**III.   U.S. ENVIRONMENTAL PROTECTION AGENCY**

*Status of Plaintiffs and Declarants*

As of April 24, neither ERICD nor the declarant in Exhibit V has seen any change to their EPA grants since the April 23 status conference, and the same was true for Childhood Lead Action Project as of this morning (April 25). Those grants remain frozen and inaccessible. Nor have any of these grantees received a termination notice. Instead—even after April 14—they and other EPA grantees with frozen funds have received indications from EPA that their funding has *not* been terminated. CLAP, for example, received an e-mail on April 15 from their agency project officer confirming their recurring monthly meeting for May.

5

*Outstanding Issues*

Defendant EPA has announced its intention to broadly terminate entire grant programs. Coogan Decl. ¶ 6, ECF No. 51-1. These terminations are relevant here for two reasons. First, under the Court's preliminary injunction, Defendants' mere intention to terminate grants in the future is no excuse for keeping those grants frozen in the interim. Second, non-individualized terminations—such as, for example, the blanket cancellation of every grant in a particular grant *program*—are contrary to the Court's prohibition on "halting . . . on a non-individualized basis the processing and payment of funding that (1) was appropriated under the Inflation Reduction Act or the Infrastructure Investment and Jobs Act and (2) has already been awarded." ECF No. 45 at 61.

First, the Court should make clear that Defendants' *future* intention to terminate grants does not justify refusing to comply with the Court's order to unfreeze those grants in the interim. The federal regulations governing grants and other financial assistance programs require agencies to take certain steps before an award is terminated. In particular, and as discussed at the April 23 status conference, 2 C.F.R. § 200.341(a) provides that:

> The Federal agency or pass-through entity must provide written notice of termination to the recipient or subrecipient. The written notice of termination should include the reasons for termination, the effective date, and the portion of the Federal award to be terminated, if applicable.[1]

---

[1] EPA has adopted the uniform guidance set out in 2 CFR Part 200. *See* 2 C.F.R. § 1500.2.

In other words, the regulations do not provide for the termination of grants sub silentio, without any notice to recipients. Instead, until an agency provides written notice pursuant to Section 200.341(a), a grant is not terminated, and that termination may not take effect. This requirement is hardly a technicality, not only because of actual notice to the grantee, but also the processes it triggers, including an administrative opportunity to object and appeal, 2 C.F.R. § 200.342, and an opportunity to recoup allowable costs, 2 C.F.R. § 200.343. Holding grantees in the kind of pre-termination limbo in which neither their funding nor these processes are available to them is precisely the kind of unlawful freeze prohibited by the Court's order.

As noted, none of Plaintiffs or their declarants have received notices of termination from EPA, but their EPA funding remains frozen. Indeed, Defendants' April 23 filing acknowledged that as of that date, certain programs were only "*slated* to be terminated," Coogan Decl. ¶ 6 (emphasis added), and hundreds of planned, future terminations had not yet been effectuated. *See* ECF No. 51, at 6 ("Approximately 377 [EPA] grantees have already received notices of their forthcoming termination, and EPA is working to send out notices of termination to the remaining approximately 404 grantees."). Defendants thus have acknowledged, and the evidence shows, that numerous grants EPA says it intends to terminate at some point in the future have not actually been terminated. Yet Defendants also admit that "those grants are currently paused (thereby preventing drawdown of

7

funds).” *Id*. That continued freeze is unjustified and not in compliance with the Court's preliminary injunction, which requires such funding to be made accessible.

Second, Plaintiffs respectfully maintain that Defendants' terminations are contrary to the plain directives of the preliminary injunction order and thus raise compliance issues that are properly—and necessarily—considered in this case due to Defendants' own conduct. Section 2 of the order enjoined Defendants Energy, EPA, HUD, Interior, and USDA from "from freezing, halting, or pausing on a non-individualized basis the processing and payment of funding that (1) was appropriated under the Inflation Reduction Act or the Infrastructure Investment and Jobs Act and (2) has already been awarded." ECF No. 45, at 61. Section 3 of the order directed those Defendants to "take immediate steps to resume the processing, disbursement, and payment of [such] already-awarded funding." *Id*.

By transitioning directly from categorically freezing these programs to categorically terminating them, EPA (and any other defendant agency engaging in similar non-individualized terminations) is "halting . . . on a non-individualized basis the processing and payment of funding" covered by the Court's order, in violation of Section 2 of the order. Defendants are also failing to "take immediate steps to resume the processing, disbursement, and payment of [such] already-awarded funding," in violation of Section 3 of the order. It would be contrary not only to the letter but to the clear purpose of the preliminary injunction order if Defendants could evade the order, and deprive recipients of vital duly awarded funding, simply by shifting from

8

categorical, non-individualized freezes to categorical, non-individualized terminations.

Nor can Defendants plausibly claim, at least based on the evidence they have submitted so far, that the decision to simply halt entire grant programs constitutes "individualized" review of any particular grant in that program. Take, for example, the Environmental and Climate Justice Block Grant Program, which EPA's declaration says the agency has "slated to be terminated." Coogan Decl. ¶ 6. Congress established that program by name in the IRA and required that the EPA Administrator "shall" make available appropriated funds to carry out statutorily specified activities "that benefit disadvantaged communities." Pub. L. 117-169, § 60201, 136 Stat. 1818, 2078-79 (codified at 42 U.S.C. § 7438). While EPA claims that it conducted "an individualized, grant-by-grant review to determine which grants should continue," that assertion is belied by their admission that this *entire* "IRA grant program[]" (as well as others) "are slated to be terminated." Coogan Decl. ¶¶ 3, 6. Indeed, the Coogan declaration does not offer any independent reason for these terminations.[2]

EPA's "individualized" inquiry thus appears to have consisted of nothing more than asking whether a grant was awarded under certain disfavored grant programs.

---

[2] To the extent that EPA seeks to rely on "alignment with Administration priorities," Coogan Decl. ¶ 3, as the "independent reason," it should provide the evidence discussed below. Even that "reason," however, would be insufficient for those grant agreements that do not specifically provide for termination based on no longer effectuating the program goals or agency priorities—as is the case, Plaintiffs understand, for numerous grants falling within the programs listed in the Coogan declaration. *See* 2 C.F.R. § 200.340(a)(4), (b). In the absence of a valid independent reason, those grants should be unfrozen.

9

But that inquiry is no more "individualized" than asking whether a grant was funded under certain disfavored statutes (i.e., the IRA and IIJA). As Plaintiffs have maintained throughout this case, a basic problem with Defendants' challenged conduct is that they have acted "based not on an individualized assessment of how particular grants have performed or after taking into consideration the terms of particular grant agreements, but on the irrelevant fact that money for those grants was appropriated under the IRA and IIJA." ECF No. 26, at 28 (internal citation omitted); *see also* Mem. & Order at 48 n.10 ("The Court is not requiring the Government to do anything o[th]er than maintain their current obligations or, alternatively, pause or terminate them *in an individualized way* consistent with law." (emphasis added)). The determination whether a grant was awarded under a specified grant program—even if it might arguably be thought of as a more *particularized* inquiry than whether the grant was funded under a specified statute— is not *individualized* under either the ordinary meaning of that term or the way it has been used throughout this litigation.

For those awards that EPA has actually terminated since the Court's preliminary injunction order or has slated to terminate, Plaintiffs respectfully submit that it would be appropriate to require EPA to provide documentation contemporaneous with the decision to terminate—i.e., not a post hoc, blanket declaration—sufficient to establish: (1) the date the decision to terminate was made; (2) the grant, loan, or other funding program to which the decision to terminate applied; and (3) the individualized basis for the termination. This is particularly

10

important for grants that the Coogan Declaration states were slated to be terminated on April 14—after this case was filed, and after the preliminary injunction hearing—to enable Plaintiffs and the Court to understand whether the "slating" was actually final (given that terminations have not actually occurred) and whether this lawsuit played any role in those termination decisions.

If Defendants are unable to adequately document that these terminations were the product of an individualized determination by providing such materials, and if they proceed to terminate or keep frozen these funds, the Court should conclude that Defendants have violated Sections 2 and 3 of its preliminary injunction order and consider appropriate next steps. Plaintiffs respectfully propose that the first such step should be to require the government to produce a knowledgeable witness for live testimony via Zoom and a log of all EPA's IIJA and IRA funding—both frozen and unfrozen—as the Court has suggested may be necessary for Interior and USDA. Should this information be insufficient, Plaintiffs respectfully suggest that additional document discovery may be appropriate, including, for example, production of (1) any EPA documents and communications created after the filing of this lawsuit on March 13 relating to the decision to terminate (or not) any IRA- or IIJA-funded grant; (2) any EPA documents and communications created after March 13 that concern whether or when to provide notice of grant terminations; and (3) any EPA documents and communications created after March 13 concerning the freezing or unfreezing of any IRA- or IIJA-appropriated funds. Depending on the contents of this production,

11

a limited set of narrow depositions may be appropriate, including a 30(b)(6) deposition on the same three topics.

Separate and apart from any funds EPA has terminated or has slated to terminate, to the extent that EPA intends to keep other funding *frozen* for other, supposedly individualized reasons, it should provide the same documentation as described above for Interior and USDA. For example, Plaintiffs are aware that some grants under the Community Change Grant program received termination letters that were later withdrawn, because they had been sent in error—yet their funding remains frozen.[3] EPA has offered no explanation as to why funding *not* scheduled for termination would remain frozen, or whether it plans to unfreeze it and when. Any funding for which the agency is unable to produce appropriate documentation should be expeditiously unfrozen in compliance with the Court's preliminary injunction. And, as with Interior and USDA, EPA should confirm at the status conference that its prior references to IRA- and IIJA-funded "grants" are meant to refer to the full universe of IRA and IIJA funding that it administers.

Dated:  April 25, 2025        Respectfully submitted,

                              /s/ Miriam Weizenbaum

                              Miriam Weizenbaum (RI Bar No. 5182)
                              DeLuca, Weizenbaum, Barry & Revens
                              199 North Main Street
                              Providence, RI 02903
                              (401) 453-1500

---

[3] *See, e.g.*, Lucas Smolcic Larson, *Trump EPA 'Accidentally' Cancels $40M for Michigan Environmental Projects*, MLive (Apr. 5, 2025), https://perma.cc/9GXQ-PFEB.

12

miriam@dwbrlaw.com

Kevin E. Friedl* (Admitted only in New York; practice supervised by DC Bar members)
Jessica Anne Morton* (DC Bar No. 1032316)
Robin F. Thurston* (DC Bar No. 1531399)
Skye L. Perryman* (DC Bar No. 984573)
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
kfriedl@democracyforward.org
jmorton@democracyforward.org
rthurston@democracyforward.org
sperryman@democracyforward.org

* admitted *pro hac vice*

**CERTIFICATE OF SERVICE**

On April 25, 2025, I caused the foregoing and accompanying materials to be served on all Defendants through the CM/ECF system.

/s/ Miriam Weizenbaum
Miriam Weizenbaum
