UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| WOONASQUATUCKET RIVER WATERSHED COUNCIL, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DEPARTMENT OF AGRICULTURE, *et al.*,<br><br>Defendants. | Civil Action No. 1:25-cv-97 (MSM) |

# DEFENDANTS' THIRD STATUS REPORT REGARDING PRELIMINARY INJUNCTION

Consistent with the instructions provided during the status conference of April 23, 2025, as well as the Court's Order of April 24, 2025, *see* ECF No. 52, Defendants respectfully submit this status report regarding their compliance with the preliminary injunction.

Defendants respectfully submit that the below information—as supported by the attached declarations from officials at the Department of Interior and the U.S. Department of Agriculture (USDA)—demonstrates significant progress in unpausing funds as required by the Court's Order, and underscores Defendants' good-faith efforts to implement the Court's Order. Thus, Defendants respectfully submit that the Court should require an additional update from Defendants by noon on Tuesday, April 29, 2025, but should not require any further steps at this time.

## I. U.S. DEPARTMENT OF THE INTERIOR

Consistent with the Court's instruction to "provide a sworn declaration from an Interior agency official," ECF No. 52 at 3, Defendants attach hereto the Whitehead Declaration, from Interior's Director of the Office of Grants Management.

As set forth in more detail in the Whitehead Declaration, Interior has now identified approximately 650 grants subject to the Court's Order (as compared to 464 grants earlier this week). *See* Whitehead Decl. ¶ 7. All 650 of those grants have now been unpaused. *Id.* ¶¶ 8-9.

The process of identifying those grants has required time, given the decentralized nature of Interior, which lacks "a centralized Department-wide system that is used for all grants" and many functions are "currently organized at the bureau or office level." *Id.* ¶¶ 4-5. Additionally, "[t]he process of unpausing these grants required manual action by Department staff." *Id.* ¶ 9. Interior continues to perform diligence to ensure that it has identified all grants subject to the Court's Order, *see id.* ¶¶ 10-12, and Interior "expects these diligence efforts to be complete within one week, by May 2, 2025." *Id.* ¶ 11. To the extent Interior identifies additional grants subject to the Court's Order, Interior will "immediately release those funds, and each grant officer has been specifically directed to release eligible funds if discovered." *Id.* ¶ 12.

Interior has identified these approximately 650 grants as being subject to the Court's Order because "they were funded with IIJA/IRA funds and were not otherwise subject to an individualized pause determination." *Id.* ¶ 8. Currently, however, Interior "has not identified any IIJA/IRA-funded grants that were subject to an

individualized pause determination." *Id.* Thus, Interior is different from USDA and EPA in this respect. *See* Parts II-III, *infra* (discussing those agencies' individualized pauses).

As for written notice, a copy of the injunction continues to be posted on the agency website. *See* Whitehead Decl. ¶ 14. Interior has also "instructed each of its grant officers to post a grant note in GrantSolutions for each grant identified as being funded by the IIJA and IRA," *id.* ¶ 16, which will provide individualized notice to those grantees. Interior expects this process to be complete "no later than Friday, May 2, 2025." *Id.*

## II.  U.S. DEPARTMENT OF AGRICULTURE

Consistent with the Court's instruction to "provide a sworn declaration from a USDA agency official," ECF No. 52 at 5, Defendants attach hereto the Whitney Declaration, from USDA's Director of the Transparency and Accountability Reporting Division of the Office of the Chief Financial Officer.

As set forth in more detail in the Whitney Declaration, USDA has a similarly decentralized structure, "with many functions currently organized at the mission area, agency, or office level." Whitney Decl. ¶ 3. USDA does not have "a centralized Department-wide system that is used for all grants," and indeed "USDA has 21 awarding agencies and staff offices, which use 87 information technology systems to manage 417 assistance programs as of April 24, 2025." *Id.*

USDA has identified approximately 11,400 grants and cooperative agreements that are funded by the IRA and/or IIJA. *Id.* ¶ 10. Additionally, USDA has identified 119 direct loans and approximately 31,000 other financial assistance transactions

-3-

that are active and funded by the IRA and/or IIJA. *Id.* If anything, USDA believes these numbers are an under-count of the full universe of active awards. *Id.* ¶ 12. Thus, there are "at least 42,627 unique grants, cooperative agreements, direct loans, and other financial assistance transactions funded by either IRA or IIJA[.]" *Id.* ¶ 16.

USDA has instructed all awarding agencies and staff offices "to lift freezes on awards due to the award's funding source being IRA or IIJA." *Id.* ¶ 15. Aside from those awards that remain paused based on individualized, pre-existing, independent reasons (discussed in more detail below), USDA is not aware of any "other instructions preventing agencies from issuing payments pursuant to previously frozen IRA- and IIJA-funded awards." *Id.* ¶ 17.

USDA agencies and offices "are working through their backlogs of pending invoices and actively issuing payments as quickly as possible." *Id.* USDA cannot currently "estimate when we will complete processing these backlogs, as in many cases, awardees need to make routine corrections to their invoices." *Id.* Additionally, given the way USDA's systems are structured, USDA is currently unable to "report the volume of payments and total value to date" for awards funded by IRA or IIJA, as preparing that report "would significantly impair [USDA staff's] ability to continue processing payments." *Id.* ¶ 18.

Nonetheless, the Whitney Declaration believes there has been "significant progress in processing and approving" payment requests for awards funded under the IRA or IIJA. *Id.* ¶ 17. Additionally, one USDA sub-component (the National Institute of Food and Agriculture, NIFA) has confirmed that, since April 15, 2025, it has

disbursed almost $14 million in IRA and IIJA funds. *Id.* ¶ 19. Another sub-component (the Farm Production and Conservation Business Center, FPAC BC) has disbursed over $111 million in payments since April 15, 2025, a portion of which is IRA and IIJA money, and they have "assigned staff to work extra hours to issue payments in accordance with the court's preliminary injunction and work through the backlog." *Id.*

As noted above, there are some USDA awards funded under the IRA or IIJA that remain paused for pre-existing, individualized, independent reasons. Specifically, out of the "at least 42,627 unique grants, cooperative agreements, direct loans, and other financial assistance transactions funded by either IRA or IIJA, 309 awards remain frozen because they were individually reviewed and identified as inconsistent with the Secretary's priorities" relating to diversity, equity, and inclusion (DEI). *Id.* ¶ 16. Those awards were identified as part of "an individualized, award-by-award review of grants, cooperative agreements, and other transactions to determine which should continue, which should be modified, and which should be terminated based on alignment with Administration priorities or the purposes for which the Federal award was made." *Id.* ¶ 5. And that "review process . . . was completed on March 27, 2025." *Id.* ¶ 8. Accordingly, these ongoing pauses are consistent with the Court's Order—*i.e.*, because they "are only frozen 'based on a pre-existing determination (from before entry of the preliminary injunction) to pause that funding on an individualized basis for some other, independent reason (apart from

the fact that it was appropriated under the IRA/IIJA).'"  ECF No. 52 at 5; *see also* Whitney Decl. ¶ 16.

Finally, as for written notice, USDA has now "completed electronic notifications to the e-mail addresses on file for active awardees" with IRA- or IIJA-funded awards.  Whitney Decl. ¶ 14.

### III.  U.S. ENVIRONMENTAL PROTECTION AGENCY

As the Court's Order noted, *see* ECF No. 52 at 6, the only compliance dispute with respect to EPA involves the approximately 800 grants that remain paused because EPA has decided to terminate them.  *See* Coogan Decl. (ECF No. 51-1) ¶ 7.  The continued pause of these grants does not violate the Court's preliminary injunction, particularly given that grant terminations are not part of this case.  Regardless, there is no basis for permitting discovery or further inquiry into the terminations as part of any compliance-related inquiry.

#### A.  The EPA's Ongoing Pauses Comply with the Court's Injunction

This Court's April 24 Order acknowledged that it was permissible for grants to remain frozen "based on a pre-existing determination (from before entry of the preliminary injunction) to pause that funding on an individualized basis for some other, independent reason (apart from the fact that it was appropriated under the IRA/IIJA)."  ECF No. 52 at 5; *see also id.* ("The Court agrees with that interpretation of its order—that individual grants could possibly remain frozen based on those terms[.]").  EPA has submitted a sworn declaration confirming that all of the ongoing pauses meet those criteria.  *See* Coogan Decl. ¶ 7 ("The above still-paused, soon-to-be-terminated IRA grants meet those criteria.").  That declaration on its own

therefore establishes that the pauses are consistent with the Court's understanding of its prior Order; nothing more is required to confirm EPA's compliance.

### B. Agency Terminations of Specific Grants Are Not Part of this Case, and Should Not Be a Basis for Disputing Compliance

As the Court's April 24 Order notes, during the April 23 hearing Plaintiffs "protested the terminations on two grounds," ECF No. 52 at 6. It appears that Plaintiffs now seek to use this case as a vehicle for challenging EPA's grant terminations, potentially in connection with arguing that EPA has violated the Court's injunction. Any such effort would be inappropriate.

Most fundamentally, this case is not about grant terminations. Plaintiffs repeatedly stated as much in urging the Court to enter a preliminary injunction. *See* ECF No. 38 at 4 (seeking to distinguish the Supreme Court's decision in *Department of Education v. California* on the basis that "[h]ere, of course, Plaintiffs do not challenge individual terminations and do not seek grant-specific remedies"); ECF No. 42 at 3 ("While the *California* majority concluded that the claims over individual terminations were, in essence, contract claims, the same plainly is not true of Plaintiffs' challenges to the broad freeze policies and to Memo M-25-11."); *see also* ECF No. 32 at 31 ("Section 200.340 is about terminations, not indefinite pauses, making it irrelevant to these funds."). Particularly after making those arguments in support of their request for an injunction, Plaintiffs cannot now use that injunction as a basis for challenging specific grant terminations—the very action that they said their underlying claims did not seek to challenge.

In an analogous situation where a court had entered injunctive relief against an agency's "blanket suspension of congressionally appropriated funds," the Court made clear that it would not "supervis[e] Defendants' determinations as to whether to continue or terminate individual grants based on their terms." *AIDS Vaccine Advoc. Coal. v. Dep't of State*, --- F. Supp. 3d ----, 2025 WL 577516, at *1-2 (D.D.C. Feb. 22, 2025). The alternative would require the agency to "litigate every arguable breach of contract in a contempt posture," *id.* at *2, which is essentially what Plaintiffs are seeking here. EPA should not be forced to litigate its underlying termination decisions under a framework of compliance with the Court's injunction, enforceable by potential contempt. To the extent any EPA grantee wishes to challenge their termination or withholding of funds, they are free to do so in an appropriate forum, *see id.*, but those issues should not be litigated in compliance proceedings before this Court, much less in a case that was purportedly never about specific termination decisions.

### C. Even if the Court Were Willing to Examine the Specific Agency Terminations, Plaintiffs' Challenges are Meritless, and Certainly No Discovery Should Be Awarded

Even assuming *arguendo* that this Court could properly evaluate the specific terminations, Plaintiffs' challenges are meritless. At the hearing, Plaintiffs first argued that that, even if EPA has made a decision to terminate certain grants, that does not mean that those grants have actually been terminated yet. *See* 2 C.F.R. § 200.341(a) (requiring a "written notice of termination" which "should include the reasons for termination [and] the effective date").

Defendants do not dispute that an agency's decision to terminate a grant is legally distinct from "the effective date" of the actual grant termination. From a compliance perspective, however, that distinction is irrelevant because all of the pause/termination decisions here occurred prior to the Court's preliminary injunction, as part of an individualized review, and for reasons other than the fact that the grants involved IRA/IIJA-appropriated funding. *See* Coogan Decl. ¶ 7. Those facts alone demonstrate that the agency's pause/termination decisions were consistent with the Court's stated understanding of its injunction. *See* ECF No. 52 at 5. Regardless of the actual date on which any grant is terminated, then, there is no compliance issue because the pause/termination decisions here were made by the agency in a manner consistent with the injunction.*

As for Plaintiffs' assertion that the terminations were not truly individualized, the Coogan Declaration explicitly says the opposite. "EPA leadership conducted an *individualized, grant-by-grant review* to determine which grants should continue, which should be modified, and which should be terminated based on alignment with Administration priorities or the purposes for which the Federal award was made." Coogan Decl. ¶ 3 (emphasis added). "The review process resulted in EPA continuing" approximately 2004 IIJA-funded grants, and 979 IRA-funded grants. *Id.* ¶ 4. The

---

* Defendants also do not dispute that, although the grants are currently paused (in the sense that grantees are not currently permitted to drawdown the funds), Defendants are still required to reimburse grantees for appropriate costs incurred up until the date the grants are actually terminated. *See* Coogan Decl. ¶ 8; *see also* 2 C.F.R. §§ 200.343, 200.344(d). Thus, grantees will still be reimbursed for appropriate costs incurred prior to the actual effective date of termination.

review process also resulted in decisions to terminate approximately 800 IRA-funded grants. *Id.* ¶ 5. Terminating 800 grants, and allowing approximately 3000 grants to continue, confirms the individualized nature of the review. *See also id.* ¶ 7. There is no basis for ignoring the Coogan Declaration's express statements about the nature of this review.

As the Supreme Court recently reaffirmed, "agencies are entitled to a presumption of regularity," and there is a "high standard that must be met" before courts may attempt to "peel back the curtain" on agency representations. *Food & Drug Admin. v. Wages & White Lion Invs., L.L.C.*, 145 S. Ct. 898, 922-23 (2025). Here, Plaintiffs' speculation does not satisfy that "high standard," and there is no need for further inquiry into the agency terminations. Those terminations may be challenged in other cases in the appropriate forum, but they are not properly part of this case, and certainly should not be part of compliance proceedings enforceable through contempt.

Finally, even if this Court had concerns about whether EPA's ongoing pauses comply with its injunction, the Court could simply address that discrete question— but there is no need or basis for authorizing discovery into EPA's terminations. This dispute is before the Court precisely because Defendants openly raised the issue in their prior status report, *see* ECF No. 51 at 5-7, and EPA submitted a declaration explaining its views on the issue, *see* ECF No. 51-1. Given that the agency has acted responsibly and openly disclosed the ongoing terminations and the basis for them, there is no need for prolonging these compliance proceedings by authorizing

discovery—particularly in a case that is seeking review under the Administrative Procedure Act and therefore discovery even on the merits of Plaintiffs' claims would not be available.

Nor should the Court entertain any request that EPA "be required to 'show its work' before the terminations can proceed." ECF No. 52 at 7. That is indistinguishable from the type of preclearance regime that Chief Judge McConnell disavowed in *New York v. Trump*, No. 25-cv-39, ECF No. 107 at 1, 2025 WL 467000, at *1 (D. R.I. Feb. 12, 2025) ("Neither the TRO nor the Court's subsequent Order require the Defendants to seek 'preclearance' from the Court before acting to terminate funding when that decision is based on *actual authority in the applicable statutory, regulatory, or grant terms*." (citations omitted, emphasis in original)). And requiring EPA (or any agency) to "show its work" before it may exercise its lawful authorities would necessarily transform this Court into an overseer of ongoing agency actions, which is incompatible with APA review and Article III. Thus, the propriety of these terminations is not part of this case and should not be part of any ongoing compliance inquiry before this Court.

*   *   *

Overall, there do not appear to be any compliance disputes as to two agencies (Energy and HUD); two other agencies (Interior and USDA) have made significant progress towards fully unfreezing and disbursing the relevant funding; and the only compliance dispute as to the last agency (EPA) is one that is not part of this case, and which the agency openly flagged for the Court's consideration.

The Court's recent Order expressed openness to "less demanding measures to ensure compliance with the Court's order[.]"  ECF No. 52 at 6.  Defendants respectfully submit that, particularly in light of the significant progress demonstrated above and discussed in the attached declarations, the Court should direct another status report be due at noon on Tuesday, April 29, 2025, but should decline to require any further steps at this time.

Dated: April 25, 2025                                 Respectfully submitted,

                                                                  YAAKOV M. ROTH
                                                                  Acting Assistant Attorney General

                                                                  ALEXANDER K. HAAS
                                                                  Director

                                                                  */s/ Daniel Schwei*
                                                                  DANIEL SCHWEI
                                                                  Special Counsel
                                                                  ANDREW F. FREIDAH
                                                                  EITAN R. SIRKOVICH
                                                                  Trial Attorneys
                                                                  United States Department of Justice
                                                                  Civil Division, Federal Programs Branch
                                                                  1100 L Street NW
                                                                  Washington, DC 20530
                                                                  Tel.:   (202) 305-8693
                                                                  Fax:   (202) 616-8460
                                                                  Email:   daniel.s.schwei@usdoj.gov

                                                                  *Counsel for Defendants*

## CERTIFICATION OF SERVICE

  I hereby certify that on April 25, 2025, I electronically filed the within Certification with the Clerk of the United States District Court for the District of Rhode Island using the CM/ECF System, thereby serving it on all registered users in accordance with Federal Rule of Civil Procedure 5(b)(2)(E) and Local Rule Gen 305.

             /s/ Daniel Schwei
             Daniel Schwei