**DECLARATION OF TYSON WHITNEY**

I, Tyson Whitney, declare and state as follows:

1. I am the Director of the Transparency and Accountability Reporting Division of the Office of the Chief Financial Officer at the United States Department of Agriculture (USDA), located at 1400 Independence Avenue, SW, Washington, D.C. 20250. I have been in my current position since April 11, 2010, and I have been at the agency since December 16, 2002. I make the following factual statements based on my personal knowledge and belief. If called as a witness, I could and would competently testify thereto.

2. I make the statements herein on the basis of personal knowledge, as well as on information acquired by me in the course of performing my official duties, including my discussions with colleagues at USDA, who are also familiar with the facts at issue in this litigation.

3. USDA has a wide-ranging mission, including maximizing and promoting American agriculture; ensuring a safe, nutritious, and secure food supply; enhancing rural prosperity; and managing our National Forests. Given this wide range, the Department is decentralized, with many functions currently organized at the mission area, agency, or office level. As it relates to compliance in this case, I note that there is not a centralized Department-wide system that is used for all grants. USDA has 21 awarding agencies and staff offices, which use 87 information technology systems to manage 417 assistance programs as of April 24, 2025.

4. On January 21, 2025, the Acting Secretary of USDA imposed a short-term moratorium on the execution of new grants, cooperative agreements, and contracts to conform to all applicable policies of the new Administration.

5. On January 23, 2025, and distinct from any Executive Orders or OMB memoranda, USDA agencies and staff offices initiated an individualized, award-by-award review of grants, cooperative agreements, and other transactions to determine which should continue, which should be modified, and which should be terminated based on alignment with Administration priorities or the purposes for which the Federal award was made. Staff reviewed

funding announcements, award summaries, and project narratives, among other documents, as part of that review.

6. Pursuant to that process USDA staff have reviewed awards for consistency with, among other policies and priorities, USDA Secretary's Memorandum 1078-001 and Secretary's Memorandum 1078-004. In general, these two memoranda relate to the Secretary's priorities on diversity, equity, and inclusion (DEI), and they are available online at https://www.usda.gov/about-usda/policies-and-links/departmental-directives/directives-category.

7. As agencies and staff offices have identified awards that are potentially inconsistent with the Secretary's priorities on DEI, they have submitted that information to my staff for centralized reporting to the Office of the Secretary.

8. The review process continued through February and March, and it was completed on March 27, 2025. At this time, the Office of the Secretary is actively reviewing agency and staff office recommendations regarding those awards.

9. My staff has identified ten agencies and staff offices that maintain active awards funded by the Infrastructure Investment and Jobs Act (IIJA) and the Inflation Reduction Act (IRA): Agricultural Research Service (ARS), Economic Research Service (ERS), Farm Service Agency (FSA), Forest Service (FS), National Agricultural Statistical Service (NASS), National Institute of Food and Agriculture (NIFA), Natural Resources Conservation Service (NRCS), Office of the Chief Economist (OCE), Rural Business-Cooperative Service (RBCS), and Rural Utilities Service (RUS). FS, NIFA, and OCE service their own awards. ARS services awards for itself as well as ERS and NASS. FSA and NRCS awards are serviced by the Farm Production and Conservation Business Center (FPAC BC). RBCS and RUS awards are serviced by the Rural Development Business Center (RD BC).

10. Using data from USASpending.gov, my staff has identified 10,222 active, IRA-funded grants and cooperative agreements. In addition, my staff has identified 1,214 active, IIJA-funded grants and cooperative agreements. 14 of those identified awards are funded by both IRA and IIJA. In addition, there are 97 direct loans and 30,017 other financial assistance

transactions that are active and funded by IRA. Similarly, there are 22 direct loans funded and 1,069 other financial assistance transactions that are active and funded by IIJA.

11. Because of limitations related to the grant and loan management system used by RBCS and RUS, there may be additional, active awards made by RBCS and RUS and funded by IRA and IIJA that cannot reliably be retrieved from USASpending.gov.

12. At the time of the Court's Order dated April 15, 2025, a significant portion of USDA's IIJA- and IRA-funded awards were already unfrozen. FS lifted its IIJA- and IRA-related freezes on or around early March, and NRCS lifted its IIJA- and IRA-related freezes on several large programs in late February.

13. On April 16, 2025, my office transmitted instructions to all 21 awarding agencies and staff offices to notify all active grant recipients, cooperators, or borrowers (or similarly situated recipients) who have been awarded funds under IRA or IIJA of the Court's preliminary injunction, pursuant to the Court's order. Agencies and staff offices that did not maintain active awards funded by IIJA or IRA were instructed to notify my office that they had no such awards, and 13 of them provided such a negative response.

14. As of April 24, 2025, all ten awarding agencies and staff offices with active IRA- or IIJA-funded awards have notified my office that they have completed electronic notifications to the e-mail addresses on file for active awardees.

15. Immediately after the Court's order, USDA began the process of unfreezing awards to ensure compliance. All awarding agencies and staff offices were notified to lift freezes on awards due to the award's funding source being IRA or IIJA. No instructions were given to initiate new reviews of those awards.

16. Of at least 42,627 unique grants, cooperative agreements, direct loans, and other financial assistance transactions funded by either IRA or IIJA, 309 awards remain frozen because they were individually reviewed and identified as inconsistent with the Secretary's priorities on DEI in connection with the review process described above. As noted, that review process concluded on March 27, 2025, and therefore the decisions to freeze these 309 awards all

occurred prior to entry of the Court's preliminary injunction on April 15, 2025. Additionally, the decisions to freeze these awards were made on an individualized basis for an independent reason (i.e., apart from the fact that they were funded under IRA or IIJA). Despite the current pause on these grants, if any of these awards are terminated, USDA will still reimburse all costs properly incurred prior to the grant formally being terminated once recipients submit final invoices as part of the grant close-out process detailed in the grant termination letters and at 2 CFR § 200.344.

17. Other than the freezes that remain on DEI awards, I am aware of no other instructions preventing agencies from issuing payments pursuant to previously frozen IRA- and IIJA-funded awards. Agencies and staff offices are working through their backlogs of pending invoices and actively issuing payments as quickly as possible. We cannot estimate when we will complete processing these backlogs, as in many cases, awardees need to make routine corrections to their invoices. For those payment requests that do not require corrections, I believe agencies and staff offices have made significant progress in processing and approving them.

18. Agencies and staff offices are processing IIJA and IRA payments at the same time that they are processing new invoices. Staff have not been manually tracking the volume and scope of IRA and IIJA payments as they are being issued, and many systems do not contain a unique identifier in their report-generating capabilities related to their status as being funded by IRA or IIJA. In many cases, staff would need to manually analyze recent payments and pending invoices to determine their funding source in order to report the volume of payments and total value to date. That process would be time-consuming and would significantly impair their ability to continue processing payments.

19. Although we cannot provide USDA-wide estimates of pending payments requests remaining or the volume of payments issued specifically on IRA or IIJA-funded grants, USDA is processing a significant number of overall payment requests. Some agencies have been able to generate reports identifying disbursements relevant to the Court's injunction. Since April 15, 2025, NIFA has disbursed $13,926,566.96 of IRA and IIJA funds. FPAC BC has assigned staff

to work extra hours to issue payments in accordance with the court's preliminary injunction and work through the backlog. Although FPAC BC cannot quantify its disbursement of IRA and IIJA funds without manual analysis, it has reported that it has issued 624 payments, totaling $111,237,425 since April 15, 2025, of which a portion is IRA and IIJA money. As of today, there are 978 payments remaining in their queue, which aligns with their routine backlog. To be clear, not all of these are IRA and IIJA payment requests, but reflect a significant effort by the office to work through payment requests since the preliminary injunction went into effect.

    I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed in Washington, D.C., on this 25th day of April, 2025.

_____

Tyson Whitney
Director
Transparency and Accountability Reporting Division
Office of the Chief Financial Officer
U.S. Department of Agriculture