UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| WOONASQUATUCKET RIVER WATERSHED COUNCIL, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DEPARTMENT OF AGRICULTURE, *et al.*, <br><br> Defendants. | Civil Action No. 1:25-cv-97 (MSM) |

# DEFENDANTS' FOURTH STATUS REPORT REGARDING PRELIMINARY INJUNCTION

Consistent with the instructions provided during the status conference of April 25, 2025, as well as the Court's Order of April 28, 2025, *see* ECF No. 58, Defendants respectfully submit this status report regarding their compliance with the preliminary injunction.

Defendants respectfully submit that the below information—as supported by the attached declarations—demonstrates full compliance with the Court's Order, and thus no further updates or compliance-related proceedings are necessary beyond the status conference previously scheduled for May 5, 2025.

## I.  U.S. DEPARTMENT OF THE INTERIOR

As the Court's April 28 Order noted, Interior had previously "identified 650 IIJA or IRA grants . . . that have been unpaused as of April 25," and Interior expected to complete its efforts in identifying additional grants needing to be unpaused, "as well as its efforts to comply with notice requirements . . . by this Friday, May 2." ECF

No. 58 at 2. As the attached Supplemental Whitehead Declaration reflects, Interior believes it is now in full compliance with the Court's Order.

Specifically, in addition to the 650 previously identified grants, Interior's various bureaus have identified more awards that were paused, and which Interior has now unpaused. *See* Suppl. Whitehead Decl. ¶¶ 5-11, 14. Overall, "[t]he Department has completed its review and analysis for each of constituent bureaus and offices, ultimately individually unpausing 1,422 awards with unobligated balances of over $713 million." *Id.* ¶ 15. Thus, "[t]he Department believes it is in compliance with the unpausing provision of the Order." *Id.*

As for notice to grantees, Interior has now completed those efforts as well. *See id.* ¶¶ 18-19. Thus, Defendants do not believe there are any further compliance issues regarding Interior.

## II.    U.S. DEPARTMENT OF AGRICULTURE

The Court's April 28 Order directed USDA to address the following issues: (a) "how many IIJA and IRA grants (of the 42,627 identified so far) are unfrozen"; (b) "how USDA understands 'already-awarded' grants"; (c) "further explain the 'individualized review' process for keeping those 309 grants frozen"; and (d) "summarize all progress with compliance since the last conference." ECF No. 58 at 3-4. Defendants address each topic in turn, as supported by the attached Supplemental Whitney Declaration.

### A.    Number of Grants Unfrozen.

Aside from the grants that remain frozen because they were individually reviewed and identified as inconsistent with the Secretary's priorities, USDA has

-2-

unfrozen all of the other awards funded by either the IRA or IIJA. *See* Suppl. Whitney Decl. ¶ 4. Previously, USDA had identified 309 IRA/IIJA-funded awards as being frozen pursuant to that individualized review, though the current number is only 34 awards. *See id.* ¶¶ 5-6.

### B.    "Already-Awarded" Grants.

USDA understands the term "already-awarded" grants to mean those for which the agency has (1) selected a specific recipient, and (2) obligated funding to that recipient. *See* Suppl. Whitney Decl. ¶ 8.

With respect to the latter requirement, that is consistent with the usual meaning of an "award," which is typically not something contingent or dependent on future decisions. *See, e.g.* Black's Law Dictionary, "award" (12th ed. 2024) ("A final judgment or decision, esp. one by an arbitrator or by a jury assessing damages."); Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/award ("something that is conferred or bestowed especially on the basis of merit or need" or "a judgment or final decision"). Thus, until a grant has become "an obligation of the United States Government," 31 U.S.C. § 1501(a), the grant has not been "awarded" as USDA understands that term. *Cf.* GAO, *A Glossary of Terms Used in the Federal Budget Process* (Sep. 2005), https://www.gao.gov/assets/gao-05-734sp.pdf, at 70 (defining "obligation" as "[a] definite commitment that creates a legal liability of the government for the payment of goods and services ordered or received" and stating that "[a]n agency incurs an obligation, for example, when it places an order, signs a contract, *awards a grant*, purchases a service, or takes other actions that require the government to make payments to the public" (emphasis added)).

-3-

This definition is consistent with the Court's injunction applying to Codman Square Neighborhood Development Corporation, which was specifically selected for a grant and was obligated a specific amount of funding prior to the Court's injunction. *See* ECF No. 26-3 ¶ 9 ("HUD awarded us the grant in November, and we received the award letter. The grant is for $750,000[.] . . . We countersigned the Elements Award Commitment letter in November and sent it back.").

This definition is also consistent with the Court's rationale in its preliminary-injunction decision, in which the Court reasoned that "without injunctive relief . . . the funding that the Nonprofits are owed (based on the Agencies' own past commitments) creates an indefinite limbo." ECF No. 45 at 56. If an agency has not yet obligated a specific amount of funding to a particular recipient, however, there is no "past commitment[]" by the agency nor is the recipient "owed" any such funding. Finally, this definition is also consistent with the scope of Chief Judge McConnell's injunction, which likewise applies only to obligated funding. *See New York v. Trump*, No. 25-cv-39, 2025 WL 715621, at *16 (D. R.I. Mar. 6, 2025) ("The Agency Defendants are enjoined from pausing, freezing, blocking, canceling, suspending, terminating, or otherwise impeding the disbursement of appropriated federal funds to the States under awarded grants, executed contracts, or other executed *financial obligations*[.]" (emphasis added)); *see also id.* at *2 (discussing obligations of funding); *id.* at *16 ("The Defendants are not harmed where the order requires them to disburse funds that Congress has appropriated to the States and *that they have obligated*." (emphasis added)). Accordingly, "already awarded" grants is best understood as requiring both

that the agency has (1) selected a specific recipient, and (2) obligated funding to that recipient.

With respect to the USDA e-mail that Plaintiffs previously attached, *see* ECF No. 55-1, most of that e-mail reflects that not-yet-obligated funding is not required to continue. *E.g.*, *id.* at 1 ("The using of IRA and IIJA funds applies to the payment of previously approved contracts, grants, and agreements. There is no authority to enter new obligations, contracts, grants, or agreements using IRA and IIJA funds."); *id.* ("We are still unable to execute any new obligations with IRA funding at this time[.]").

Plaintiffs previously raised concerns about the following sentence in that email: "IRA-funded RCPP projects that do not yet have an executed agreement (we have one project in RI) in place should remain paused." *Id.* As discussed in the Supplemental Whitney Declaration, however, USDA's Regional Conservation Partnership Program (RCPP) projects do not involve obligated funding until there is an executed supplemental agreement. *See* Suppl. Whitney Decl. ¶ 10. Indeed, for the RCPP project mentioned in that e-mail—*i.e.*, the project in Rhode Island—USDA has not committed any funds, and neither party has signed any funding agreement. *Id.* ¶¶ 11-13.[1] Although an over-arching programmatic partnership agreement has been signed, that agreement only defines the relationship between the agency and

---

[1] For clarity, the Court's April 28 Order appears to assume that this RCPP issue pertains to the Eastern Rhode Island Conservation District, *see* ECF No. 58 at 3-4, but the particular project referenced in this e-mail does not involve the Eastern Rhode Island Conservation District or any other identified plaintiff entity. *See* Suppl. Whitney Decl. ¶¶ 11-12.

the Lead Partner entity, but that agreement does not award any specific funding for any particular project. *See id.* ¶ 10.

Thus, this project is fundamentally different from Codman Square because, unlike Codman Square, no particular funding has been obligated for this project. *See* Suppl. Whitney Decl. ¶ 13. USDA therefore does not understand the Court's Order to require it to continue moving forward with negotiating a supplemental agreement and obligating new funding for this project. *Id.* Extending the Court's injunction to this project would improperly convert the Court's Order into a command that agencies obligate new funding and would require agencies to negotiate grantee funding amounts (and other aspects of the grantee relationship) under potential penalty of contempt.

### C. Individualized Review Process.

Defendants do not believe that further inquiry into USDA's individualized review process is necessary or appropriate, given that the Court has already agreed that grants may "remain frozen . . . based on a pre-existing determination (from before entry of the preliminary injunction) to pause that funding on an individualized basis for some other, independent reason (apart from the fact that it was appropriated under the IRA/IIJA)," ECF No. 52 at 5, and USDA has already submitted a sworn declaration confirming that the remaining paused grants meet those criteria, ECF No. 56-2 ¶ 16.

Nonetheless, in compliance with the Court's Order, the Supplemental Whitney Declaration provides further detail about USDA's individualized review process. *See* Suppl. Whitney Decl. ¶¶ 14-19. The individualized nature of this review involved

several award-specific considerations—such as whether any equity-related term in the award was, in fact, related to DEI issues; whether any racial, ethnic, or gender preferences in the awards were statutorily required; and the recommendation for how to address any DEI-related issues in the awards. *Id.* ¶¶ 16-18. In light of this additional information, there can be no serious doubt that this review process was genuinely individualized and therefore the pauses stemming from that review are outside the scope of this case and the Court's injunction.

### D.  Payment Update.

Consistent with the Court's instruction for USDA to "summarize all progress with compliance since the last conference," ECF No. 58 at 4, the Supplemental Whitney Declaration also provides an update on USDA's progress in processing payment requests. *See* Suppl. Whitney Decl. ¶¶ 20-23. Specifically, USDA has "devoted extra resources to processing . . . invoices and payments" for IRA/IIJA-funded awards, *id.* ¶ 20, and based on those efforts "all agencies with IRA- or IIJA-funded awards have indicated that they are caught up with their backlogs associated with those funds." *Id.* ¶ 23. Thus, Defendants respectfully submit that USDA is in full compliance with the Court's Order.

### III.  U.S. ENVIRONMENTAL PROTECTION AGENCY

As the Court's April 28 Order reflects, EPA previously disclosed that it had kept certain grants paused because the agency intended to terminate them. *See* ECF No. 58 at 4; *see also* Coogan Decl. (ECF No. 51-1) ¶¶ 3-7. The Court "ordered these funds unfrozen until they are definitively terminated consistent with 2 C.F.R. § 200.341(a) and other applicable regulations." ECF No. 58 at 4. The Court then

directed EPA, in this status report, "to confirm that all of EPA's IIJA and IRA funds are unfrozen pending termination," and also to "detail EPA's efforts to notice remaining Nonprofits of any impending terminations." *Id.* at 5.

As discussed in the attached Supplemental Coogan Declaration, EPA has now unpaused those funds that are not yet terminated. *See* Suppl. Coogan Decl. ¶ 3. In particular, EPA "has restored access to funding" for over $2 billion in funding for recipients in the grant programs that are intended to be terminated. *Id.*

As also discussed, EPA is continuing to move forward with the process of terminating such grants. *Id.* ¶ 6. Specifically, "[o]ut of the 404 awards slated for termination mentioned in . . . my April 25th Declaration . . . EPA has sent termination notices to 57 recipients" and "expects approximately 300 notices to be sent out by the end of the day on May 9th, 2025." *Id.*

Once a grant is terminated, EPA then "disables the recipient's access to drawing down funds in ASAP." *Id.* ¶ 4. Under the regulations, "[a] grant is terminated when EPA provides written notice of the termination to the recipient," because "[t]he effective date [of termination] is the date that the written notice is sent," *id.* ¶ 4, and EPA's dispute procedures occur after the termination, *id.* ¶ 5. Even as a dispute proceeds, "[t]he termination remains effective." *Id.* ¶ 5.

Thus, EPA has unpaused funding for grants that are not-yet-terminated, though EPA is continuing to move forward with terminating grants and disabling those terminated grantees' access to funding in ASAP. This approach comports with

the Court's Order prohibiting continued pauses pending a future termination, and thus EPA respectfully submits it is in full compliance with the Court's injunction.

*   *   *

Defendants believe that all agencies are in compliance with the Court's Order, and thus there is no need for any further inquiry or updates beyond the status conference previously scheduled for May 5, 2025.

Dated: May 2, 2025                    Respectfully submitted,

                                      YAAKOV M. ROTH
                                      Acting Assistant Attorney General

                                      ALEXANDER K. HAAS
                                      Director

                                      */s/ Daniel Schwei*
                                      DANIEL SCHWEI
                                      Special Counsel
                                      ANDREW F. FREIDAH
                                      EITAN R. SIRKOVICH
                                      Trial Attorneys
                                      United States Department of Justice
                                      Civil Division, Federal Programs Branch
                                      1100 L Street NW
                                      Washington, DC 20530
                                      Tel.:   (202) 305-8693
                                      Fax:    (202) 616-8460
                                      Email:  daniel.s.schwei@usdoj.gov

                                      *Counsel for Defendants*

## CERTIFICATION OF SERVICE

     I hereby certify that on May 2, 2025, I electronically filed the within Certification with the Clerk of the United States District Court for the District of Rhode Island using the CM/ECF System, thereby serving it on all registered users in accordance with Federal Rule of Civil Procedure 5(b)(2)(E) and Local Rule Gen 305.

                                                /s/ Daniel Schwei  
                                                Daniel Schwei