**DECLARATION OF TYSON WHITNEY**

I, Tyson Whitney, declare and state as follows:

1. I am the Director of the Transparency and Accountability Reporting Division of the Office of the Chief Financial Officer at the United States Department of Agriculture (USDA), located at 1400 Independence Avenue, SW, Washington, D.C. 20250. I have been in my current position since April 11, 2010, and I have been at the agency since December 16, 2002. I make the following factual statements based on my personal knowledge and belief. If called as a witness, I could and would competently testify thereto.

2. I make the statements herein on the basis of personal knowledge, as well as on information acquired by me in the course of performing my official duties, including my discussions with colleagues at USDA, who are also familiar with the facts at issue in this litigation.

3. USDA continues to believe that ten agencies and staff offices maintain active awards funded by the Infrastructure Investment and Jobs Act (IIJA) and the Inflation Reduction Act (IRA): Agricultural Research Service (ARS), Economic Research Service (ERS), Farm Service Agency (FSA), Forest Service (FS), National Agricultural Statistical Service (NASS), National Institute of Food and Agriculture (NIFA), Natural Resources Conservation Service (NRCS), Office of the Chief Economist (OCE), Rural Business-Cooperative Service (RBCS), and Rural Utilities Service (RUS). FS, NIFA, and OCE service their own awards. ARS services awards for itself as well as ERS and NASS. FSA and NRCS awards are serviced by the Farm Production and Conservation Business Center (FPAC BC). RBCS and RUS awards are serviced by the Rural Development Business Center (RD BC).

**Number of Grants Unfrozen**

4. My staff has confirmed with each of the awarding agencies and staff offices listed above that all awards funded by either the IRA or IIJA have been unfrozen except for those that were individually reviewed and identified prior to the preliminary injunction as inconsistent with

the Secretary's priorities. Unfrozen awards include grants, cooperative agreements, mutual interest or partnership agreements, and other forms of federal financial assistance.

5. In my previous declaration, I indicated that 309 awards remained frozen because they were individually reviewed and identified as inconsistent with the Secretary's priorities on diversity, equity, and inclusion (DEI). This number was obtained by cross-referencing the report my staff generated from USASpending.gov with the list of DEI awards maintained by staff through the individualized review process described below.

6. Upon further discussion with the awarding agencies and staff offices, my staff has learned that, following the court's preliminary injunction, and out of an abundance of caution, several agencies and staff offices unfroze some of those 309 IRA- and IIJA-funded DEI awards. In my office's latest data call from those agencies and staff offices, they identified only 34 IRA- and IIJA-funded awards that currently remain frozen for DEI. Of course, that number may change as agencies and offices further evaluate this Court's Orders.

7. Other than the freezes that remain on DEI awards, I continue to be aware of no other instructions preventing agencies from issuing payments pursuant to previously frozen IRA- and IIJA-funded awards.

**"Already-Awarded" Grants**

8. USDA understands a grant to be awarded when the agency has selected a specific recipient (or group of recipients) and made a definite commitment of funds (an "obligation") to that recipient.

9. In an e-mail dated April 24, 2025, the NRCS Acting State Conservationist in Rhode Island wrote, "IRA-funded RCPP projects that do not yet have an executed agreement (we have one project in RI) in place should remain paused."

10. The Regional Conservation Partnership Program (RCPP), operated by NRCS, referenced in the e-mail is funded in part by the IRA. In general, that program selects recipients and awards funding in two stages. First, NRCS issues a Notice of Funding Opportunity for the relevant fiscal year and, through a selection process, enters into programmatic partnership

agreements with "Lead Partners." Those programmatic partnership agreements do not award any specific funding; instead, they define the relationship between the Lead Partner and the agency. Next, NRCS enters into separate agreements, frequently with separate entities, for actual projects to be implemented and funded—i.e., producer contracts, supplemental agreements with eligible partners, or third-party contracts under one or more of the five eligible activity types. According to the agreement, obligations and expenditures stem from those producer contracts, supplemental agreements, and third-party contracts

11. In the context of the RRCPP in Rhode Island discussed in the April 24 e-mail, there is an existing programmatic partnership agreement between NRCS and the Rhode Island Agricultural Lands Preservation Commission as the Lead Partner. According to the express terms of the agreement, "This PPA does not obligate funding but instead describes the relationship between NRCS and Lead Partner and establishes the responsibilities of each partner in implementing the RCPP project and delivering the conservation benefits described herein." The programmatic partnership agreement serves as a "framework for cooperation between NRCS and [the lead partner] on implementation of eligible activities to obtain approved conservation benefits by addressing resource concerns through program contracts with eligible producers and partners within the approved project area." Thus, the signing of that programmatic partnership agreement did not award any specific funds to any specific projects in Rhode Island.

12. The Rhode Island office of NRCS has been in negotiation with the Rhode Island Department of Environmental Management on a supplemental agreement under the umbrella of the programmatic partnership agreement with the Rhode Island Agricultural Lands Preservation Commission. That agreement has not been executed by either NRCS or Rhode Island Department of Environmental Management. The Notice of Funding Opportunity was clear that "Partners will not be reimbursed for work performed before the execution of the PPA or supplemental agreement that obligates funds to that specific partner."

13. The reference to "one project in RI" in the Acting State Conservationist's e-mail was to this particular supplemental agreement, which has not been executed by either party, and for which there is no definite commitment of funds. Should this agreement have been executed, NRCS would have considered it "already awarded" pursuant to the terms of the preliminary injunction and made funds available to the partner. But NRCS does not believe that the existence of a programmatic partnership agreement, without a definite commitment of funds through a supplemental agreement, requires NRCS to move forward with awarding and obligating new funding under additional supplemental agreements. NRCS believes it to be permissible to pause programmatic partnership agreements (essentially, the framework without the specifics) that have not yet resulted in executed supplemental agreements.

**Individualized Review Process**

14. On January 22, 2025, USDA Office of the Chief Financial Officer initiated a search of DEI-related financial assistance awards for termination pursuant to direction from new leadership. On January 23, 2025, USDA agencies and staff offices were instructed to further this effort by initiating an individualized, award-by-award review of grants, cooperative agreements, and other Federal financial assistance transactions to determine which should continue, which should be modified, and which should be terminated based on alignment with Administration priorities or the purposes for which the Federal award was made. Staff reviewed funding announcements, award summaries, and project narratives, among other documents, as part of that review.

15. Review continued during the month of February when, in particular, agencies and staff offices were provided a series of terms or concepts to look for in their reviews. Staff also reviewed awards for consistency with, among other policies and priorities, USDA Secretary's Memorandum 1078-001 and Secretary's Memorandum 1078-004. In general, these two memoranda relate to the Secretary's priorities on diversity, equity, and inclusion (DEI), and they are available online at https://www.usda.gov/about-usda/policies-and-links/departmental-directives/directives-category.

4

16. Because of the overlap between some of the terms and common scientific phrases in USDA awards (e.g., "diversity" and "biodiversity", "dei" and "deionization"), the review necessitated an individualized, award-by-award analysis to ensure that the concept reflected in the award was, in fact, related to DEI.

17. As part of that review, agencies and staff offices were also directed to evaluate awards for the use of racial, ethnic, and gender preferences, except where required by statute. In many cases, USDA statutes require such preferences for groups like "socially disadvantaged farmers or ranchers" or "historically underserved producer." Because agencies and staff offices needed to identify whether the preferences in the awards were statutorily required, an individualized, award-by-award analysis was also required.

18. As awards were identified containing DEI or racial, ethnic, or gender preferences, agencies and staff offices were directed to report those awards to my office for centralized reporting to the Office of the Secretary. This reporting process also required agencies and staff offices to identify recommendations for each award, including whether the award should continue as-is, activities under the award should be modified, or the award should be terminated in part or in full. This process also necessitated an individualized, award-by-award review, as recommendations were required on the award level. My staff also continuously reviewed those submissions to ensure that awards in fact included DEI-related concepts and that recommendations could be effectuated in accordance with grant policies and procedures. The review process continued through February and March, and it was completed on March 27, 2025.

19. At this time, the Office of the Secretary is actively reviewing agency and staff office recommendations regarding those awards. Over the last several weeks, many of these awards were directed for termination, and agencies and staff offices have been issuing those terminations. Other awards were directed to be removed from the list due to leadership determinations that activities funded by those awards must or should continue. Still other awards

remain on the list for further action. Leadership is currently conducting a review of the recommendations for modification or partial termination.

## Payment Update

20. USDA agencies and staff offices that had large backlogs of invoices and payments to process for IRA- and IIJA-funded awards have indicated that they devoted extra resources to processing those invoices and payments.

21. In FPAC BC, which services FSA and NRCS awards, the Grants and Agreements Division processed a record number of payments in March (1,535 payments) and April (1,414 payments), which included the recently unfrozen funds. Historically, the average number of payments in March was 886 payments and April was 904 payments. Currently, there are 898 payments pending, which is in line with the historical backlog due to general workload management. While that backlog includes IRA and IIJA funds, the backlog for those funds is now no different than the backlog for other payments, and they are all being processed without distinction based on funding source.

22. Similarly, RD BC has also made it a top priority to catch up on payments of invoices initiated on previously obligated funds. RD BC and the associated program areas have put extra resources in getting the backlogged disbursements processed. In IRA and IIJA funds alone, RD processed 85 items totaling $13,517,983.02 during the week of April 21 to 25, 2025. During the week of April 28 to 30, 2025, 162 items totaling $23,192,280.29 were processed.

23. At this time, all agencies with IRA- or IIJA-funded awards have indicated that they are caught up with their backlogs associated with those funds. Outstanding awards that have not been processed are due to having been previously and individually identified as DEIA awards prior to the court's preliminary injunction, normal processing delays, administrative activity (such as system maintenance), or submissions from awardees requiring routine corrections. None of those delays or activities are related to the funding source.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed in Washington, D.C., on this 2nd day of May, 2025.

_____

Tyson Whitney
Director
Transparency and Accountability Reporting Division
Office of the Chief Financial Officer
U.S. Department of Agriculture