**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

WOONASQUATUCKET RIVER WATERSHED COUNCIL, *et al.*,

*Plaintiffs*,

v.

DEPARTMENT OF AGRICULTURE, *et al.*,

*Defendants*.

Case No. 1:25-cv-00097-MSM-PAS

**PLAINTIFFS' THIRD STATUS REPORT**

Pursuant to the Court's orders of April 25 and 28, Plaintiffs submit this report regarding Defendants' compliance with the preliminary injunction.

## I. U.S. DEPARTMENT OF THE INTERIOR

*Status of Plaintiffs and Declarants*

As of May 1, the declarants from Exhibit S and from Exhibits O and Z report that their funding remains unfrozen. Both declarants have now received funds.

*Outstanding Issues*

Plaintiffs will review Defendants' concurrently filed status report and declaration regarding Interior's progress in (1) providing notice to awardees and (2) identifying whether there are any additional IRA or IIJA awards beyond the 650 they previously identified, including whether any IRA or IIJA awards remain frozen, to determine whether there are additional issues to be raised with the Court.

## II. U.S. DEPARTMENT OF AGRICULTURE

*Status of Plaintiffs and Declarants*

Plaintiffs have no further updates to provide since the previous status report; to their knowledge, their grants remain unfrozen.

*Outstanding Issues*

Plaintiffs will review Defendants' concurrently filed status report and declaration clarifying (1) how many of the 42,627 identified IRA and IIJA awards remain frozen; (2) whether USDA has identified additional IRA- or IIJA-funded awards; (3) USDA's processing of already-awarded grants; and (4) the process by which USDA determined that the 309 grants it referenced should be frozen "as inconsistent with the Secretary's priorities on DEI," to determine whether there are additional issues to be raised with the Court.

## III. U.S. ENVIRONMENTAL PROTECTION AGENCY

*Status of Plaintiffs and Declarants*

As to Plaintiff Childhood Lead Action Project: on April 28, EPA restored its grant drawdown access, and CLAP processed its drawdown backlog. CLAP received those funds the following day. On May 1, however, CLAP received via e-mail a termination letter dated April 30. That letter states that the award "is terminated in its entirety effective immediately on the grounds that the award no longer effectuates the program goals or agency priorities. The objectives of the award are no longer consistent with EPA funding priorities." Ex. 1. The letter further states:

> The EPA Administrator has determined that, per the Agency's obligations to the constitutional and statutory law

> of the United States, this priority includes ensuring that the Agency's grants do not conflict with the Agency's policy of prioritizing merit, fairness, and excellence in performing our statutory functions. In addition to complying with the law, it is vital that the Agency assess whether all grant payments are free from fraud, abuse, waste, and duplication, as well as to assess whether current grants are in the best interests of the United States.
>
> The grant specified above provides funding for programs that promote initiatives that conflict with the Agency's policy of prioritizing merit, fairness, and excellence in performing our statutory functions; that are not free from fraud, abuse, waste, or duplication; or that otherwise fail to serve the best interests of the United States. The grant is inconsistent with, and no longer effectuates, Agency priorities.

*Id.* As of the morning of May 2, CLAP's grant no longer appeared on the ASAP portal.

As of the late afternoon of April 28, the declarant in Exhibit V was able to access its grant funding, and was able to submit and receive a drawdown successfully. On May 1, the declarant received a notice from EPA terminating its grant—with the same boilerplate language CLAP received—"on the grounds that the remaining portion of the Federal award will not accomplish the EPA funding priorities for achieving program goals. The objectives of the award are no longer consistent with EPA funding priorities." Ex. 2. The letter goes on to include the same paragraph about EPA's "priority" of "ensuring that the Agency's grants do not conflict with the Agency's policy." *Id.* But it does not include the subsequent paragraph from CLAP's letter, which discusses "[t]he grant specified above." *Id.*

As of April 29, Eastern Rhode Island Conservation District learned from the grantee through which it is a subgrantee that the portal for its EPA grant was open. On May 1, ERICD received word from the grantee that EPA had terminated its grant.

Plaintiffs have been notified by other EPA grantees that they received termination notices giving the same generic "explanation" for the termination.

*Outstanding Issues*

Plaintiffs will review Defendants' forthcoming status report regarding (1) the status of funds unfrozen and (2) how many of the termination notices referenced in the Coogan Declaration have been transmitted to the grantees.

Plaintiffs further submit that the termination letters received by CLAP and ERICD (via its direct grantee) provide new information underscoring that this set of terminations was categorical, not individualized; simply made permanent the freezes already in place; and therefore does not comply with Section 2 of the Court's preliminary injunction order. These letters reference only broad, undefined categories and catch-all provisions. These are not "findings." They neither provide nor claim an individualized basis for the termination, and include no reference to any specific concerns with the grantee, the project for which the grantee received funding, or the grantee's performance. Indeed, the termination letters are so generic that they do not even state the grounds for termination. They offer only a set of disjunctive possibilities, without specifying if the award was terminated because of alleged lack of merit, or alleged waste, or allegedly not "serv[ing] the best interests of the United States." This does not reflect an individualized determination.

More telling, the EPA "priorities" the termination notice articulates are not, in fact, explanations for a termination: they are explanations for a freeze. EPA's articulated priority is "*ensuring* that the Agency's grants do not conflict with the Agency's policy," such that "it is vital that the Agency *assess* whether" the grants are in the best interests of the United States. In other words, EPA seems to be saying that it does not want to pay out any more money before it assesses *whether* an award fails to prioritize merit, or is duplicative, or does not serve the best interests of the United States. CLAP's boilerplate letter, of course, does not state the particular outcome of any such assessment, if it has even yet taken place. And the letter the declarant received does not even state that EPA has made a determination that the grant actually *is* fraudulent or wasteful or not in the best interests of the United States at all. It is merely saying that EPA does not want to pay out any more money before it assesses whether these things may or may not be true. This is not an individualized termination; it is an attempt to make a freeze permanent.

Plaintiffs are mindful of the Court's prior skepticism that terminations are properly before it at this time. But given the new information (and lack of any individualized assessment) provided in the form letters, as well as EPA's admission that it has engaged in the shuttering of entire grant *programs*, Coogan Decl. ¶ 6, Plaintiffs respectfully renew their contention that in these circumstances, it would be appropriate for the Court to require EPA to provide additional information—if not actual documentation—to understand whether these mass terminations were genuinely "individualized" such that they do not violate Section 2 of the preliminary

injunction order, or whether they were categorical efforts to permanently freeze funds. This does not require an assessment of whether the terminations themselves were otherwise lawful.

Dated: May 2, 2025

Respectfully submitted,

/s/ Miriam Weizenbaum

Miriam Weizenbaum (RI Bar No. 5182)
DeLuca, Weizenbaum, Barry & Revens
199 North Main Street
Providence, RI 02903
(401) 453-1500
miriam@dwbrlaw.com

Kevin E. Friedl* (DC Bar No. 90033814)
Jessica Anne Morton* (DC Bar No. 1032316)
Robin F. Thurston* (DC Bar No. 1531399)
Skye L. Perryman* (DC Bar No. 984573)
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
kfriedl@democracyforward.org
jmorton@democracyforward.org
rthurston@democracyforward.org
sperryman@democracyforward.org

* admitted *pro hac vice*

**CERTIFICATE OF SERVICE**

On May 2, 2025, I caused the foregoing and accompanying materials to be served on all Defendants through the CM/ECF system.

/s/ Miriam Weizenbaum
Miriam Weizenbaum