UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| WOONASQUATUCKET RIVER WATERSHED COUNCIL, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. DEPARTMENT OF AGRICULTURE, *et al.*, <br><br> Defendants. | ) ) ) ) ) ) ) C.A. No. 1:25-cv-00097-MSM-PAS ) ) ) ) ) ) |

### ORDER

The Nonprofits' Motion for Discovery (ECF No. 76) is GRANTED.

This discovery dispute arises from the fact that "OMB's administrative record contained only two documents: the *Unleashing American Energy* executive order and the memo (M-25-11) that OMB subsequently issued." (ECF No. 76 at 1.)

The Nonprofits seek supplementation of that brief record. In their view, it provides no information related to the claim that OMB, Director Vought, and Director Hassett violated the APA by, "in part, withholding purportedly necessary approvals to the other Defendants to release funding appropriated by the IRA and IIJA." *Id.* The Nonprofits argue that there "can be no meaningful judicial review of OMB, Director Vought's, or Director Hassett's actions if Defendants fail to disclose what those actions even were." *Id.* at 5. And the Nonprofits contend that the disclosures thus far only address one theory: that "through Memo M-25-11," OMB "unlawfully

directed agencies to freeze funding." *Id.* But those disclosures neglect the other theory: that OMB, Director Vought, and Director Hassett "acted unlawfully in withholding purportedly necessary approvals for other agencies to release the funding." *Id.*

The Government responds with five arguments: (1) that the Nonprofits apply an incorrect standard, (2) that the documents the Nonprofits seek are unrelated to any final agency action, (3) that the documents are privileged and thus excluded from the administrative record or otherwise undiscoverable, (4) that the Nonprofits have not made an adequate showing of bad faith, and (5) that efficient judicial review is possible without record evidence. (ECF No. 77 at 5–8.)

Let us start on some common ground. Everyone agrees that ordinarily the "focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Taunton v. EPA*, 895 F.3d 120, 127 (1st Cir. 2018) (cleaned up). And everyone agrees that "exceptions do exist" to this rule. *Id.* The First Circuit has "recognized a pair of situations in which we have the discretion to supplement the agency record." *Id.*

The first exception is relevant here.[1] Courts "may consider supplemental evidence to facilitate our comprehension of the record or the agency's decision," particularly when agency decisions involve "highly technical, environmental matters"

---

[1] The Nonprofits do not argue, and the Court does not see, any basis for discovery grounded in the second exception that the First Circuit has recognized, "a strong showing of bad faith or improper behavior." *Taunton*, 895 F.3d at 127–128. Other courts have recognized other exceptions, too, but the Court today does not wade into them. *See, e.g., Borowski v. CBP*, 771 F. Supp. 3d 223, 235 (W.D.N.Y. 2025).

or "when we are faced with a failure to explain administrative action as to frustrate effective judicial review." *Id.* (cleaned up). That First Circuit caselaw defeats the Government's fourth argument.

The second and fifth arguments fall for a different reason: they construe the APA claims too narrowly. The Government argues that because OMB's consultations with agencies "would necessarily post-date the issuance of the *Unleashing* guidance, it is factually impossible for those consultations to have been considered directly or indirectly by OMB when it made its earlier decision to issue the guidance." (ECF No. 77 at 6.) That may be right for Count I, the "arbitrary and capricious" claim. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 50 (1983) (explaining that, for arbitrary and capricious claims, "it is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself").

But it is not right for Count II, the "exceeds statutory authority" claim, or Count III, the "contrary to law" claim. The Court previously reasoned that OMB's statutory role in funding was "mainly supervisory," and the main OMB issue in Count II was whether it exceeded that supervisory role. (ECF No. 45 at 49.) Recall that the statutory powers of "providing overall direction and establishing financial management policies do not clearly confer the power to halt all funding arising from the IIJA and IRA, full-stop, on a moment's notice and to create a new preclearance regime centered around OMB." *Id.* at 48–49. That is to say: part of deciding Counts II and III will require the Court to determine whether OMB and Director Hassett

actually withheld "purportedly necessary approvals to the disbursement of funds." *Id.* at 45 (cleaned up). To figure out if that happened, the narrow record produced is insufficient. And that defeats the first argument: the Court is not just applying a relevance standard, but applying the first exception set out in *Taunton*.

That leads to the Government's third argument: that the requested documents are privileged via the deliberative process privilege. "Two requirements are essential to the deliberative process privilege: the material must be predecisional and it must be deliberative." *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997). But the privilege "does not shield documents that simply state or explain a decision the government has already made or protect material that is purely factual, unless the material is so inextricably intertwined with the deliberative sections of documents that its disclosure would inevitably reveal the government's deliberations." *Id.*

And either way, the deliberative process privilege is "qualified" and can be "overcome by a sufficient showing of need." *Id.* This "need" determination is a flexible one, made "on a case-by-case, ad hoc basis." *Id.* So the Court "must undertake a fresh balancing of the competing interests," taking into account factors such as the relevance of the evidence, the availability of other evidence, the seriousness of the litigation, the role of the government, and the possibility of future timidity by government employees. *Id.* at 737–38.

Three points on the privilege as applied here. First, at least some of what the Nonprofits seek (described at ECF No. 76 at 6) does not fall within the privilege's reach. Request 2 (all "documents reflecting a disposition by OMB") is indeed a

4

request seeking documents "that simply state or explain a decision that the government has already made." *In re Sealed Case*, 121 F.3d at 737. If OMB required the funds to be frozen (under the preclearance theory), that would indeed be simply stating a final decision rather than reflecting the deliberative process that the privilege protects. Request 3 (seeking all documents "reflecting a policy or guidance" related to "granting, denying, or taking other action or inaction") is similarly unrelated to privileged material.

Admittedly, Requests 1 (all documents "reflecting a request" by the agencies "to release funding") and the Interrogatory List (a list requesting the same) are a closer call. They are likely predecisional, insofar as the agency requests precede OMB's decision to freeze funds (under the preclearance theory the Nonprofits are pursuing) and help make that decision. *See Providence J. Co. v. U.S. Dep't of Army*, 981 F.2d 552, 557 (1st Cir. 1992).[2]

But these requests are likely not "deliberative" for OMB as the privilege covers it. "A predecisional document will qualify as 'deliberative' provided it (i) formed an essential link in a specified consultative process, (ii) reflect[s] the personal opinions of the writer rather than the policy of the agency, and (iii) if released, would inaccurately reflect or prematurely disclose the views of the agency." *Providence J. Co.*, 981 F.2d at 559 (cleaned up). While the requests likely formed an "essential

---

[2] The Court recognizes that *Providence Journal Co.* is a Freedom of Information Act case rather than an APA case. But as the D.C. Circuit recognized, the privilege is the same in both contexts because "although this privilege is most commonly encountered in [FOIA] litigation, it originated as a common law privilege." *In re Sealed Case*, 121 F.3d at 737.

link," the Court does not see how these requests would reflect "personal opinions" or "prematurely disclose the views" of OMB, given that they are requests from other agencies. *Id.* For instance, the Court cannot see how a "chilling effect on candid advice from agency subordinates" would come into play, given that by law, these agencies should not be subordinate to OMB for funding decisions in the first place. *Id.* at 560. In other words, the Court struggles to see how OMB can assert the privilege for other agencies' requests. If released, these documents could not "inaccurately reflect or prematurely disclose" OMB's views. *Id.* at 559.

Yet even if the privilege were to apply (and again, the Court does not believe it does), recall that it is qualified. *In re Sealed Case*, 121 F.3d at 737. And based on the *In re Sealed Case* factors, the Nonprofits' showing of need outweighs the privilege here as to all the requests mentioned. *Id.* at 737–38. First, the requested evidence is highly relevant to the inquiries under Counts II and III, because it directly bears on whether an unlawful OMB-centered preclearance regime was established. Second, as the parties lay it out, the Court sees it as the best evidence available for the claims, and the Court does not see what other evidence would prove the pre-clearance theory that the Nonprofits are pursuing under Counts II and III. Third, this litigation, involving billions of dollars of Congressionally appropriated money, is surely important. (ECF No. 45 at 45–48 (holding that the actions likely violated the major questions doctrine)). Fourth, the Government's actions are at the center of the litigation. *Id.* And fifth, any timidity that it may cause to agency officials is

outweighed by these other factors, especially given the Court's initial determination that the Government's funding freeze likely violated the law.

So the Nonprofits' Motion for Discovery (ECF No. 76) is GRANTED. The Court approves the Nonprofits' proposed discovery requests described at ECF No. 76 at 6. These requests comply with Fed. R. Civ. P. 26(b)(1) because they are "relevant to" the Nonprofits' claims and "proportional to the needs of the case." But more than that, they satisfy the requirements necessary to expand the administrative record in an APA case and are not protected by the deliberative process privilege.

IT IS SO ORDERED.

_____
Mary S. McElroy,
United States District Judge

Date: August 8, 2025