UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| WOONASQUATUCKET RIVER WATERSHED COUNCIL, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DEPARTMENT OF AGRICULTURE, *et al.*, <br><br> Defendants. | Civil Action No. 1:25-cv-97 (MSM) |

## RESPONSE TO PLAINTIFFS' FOURTH STATUS REPORT

### *Introduction*

On August 7, 2025, Plaintiffs filed their Fourth Status Report Regarding Compliance, ECF No. 78 (hereinafter "Aug. 7th Rep."), which alleges that Defendant Department of Housing and Urban Development ("HUD") has failed to comply with the Court's preliminary injunction of April 15, *see* ECF No. 45, by failing to process funding from the Green and Resilient Retrofit Program ("GRRP"). However, HUD has complied and continues to comply with the Court's order not to freeze, halt, or pause on a non-individualized basis the processing and payment of all already-awarded funding appropriated under the Inflation Reduction Act ("IRA") and Infrastructure Investment and Jobs Act ("IIJA").[1] Thus, "[t]he purpose of a preliminary injunction [] to preserve the status quo [and] freez[e] an existing situation so as to permit the trial court, upon full adjudication of the case's merits,

---

[1] GRRP is the only funding under the IRA/IIJA that HUD is responsible for administering.

-1-

[to] more effectively to remedy discerned wrongs," is being served. *CMM Cable Rep., Inc. v. Ocean Coast Props., Inc.*, 48 F.3d 618, 620 (1st Cir. 1995).

Plaintiffs acknowledge that Defendants are in compliance with respect to two of the three funding streams under the GRRP. Aug. 7th Rep. at 3 ("As far as Plaintiffs are aware—and as described in the news article—Elements and Leading Edge funding are being processed in accordance with the Court's order."); *see also* Davis Decl. at ¶¶18-19. Disbursements under the third stream, the Comprehensive stream, are dependent upon the completion of a number of pre-established administrative steps under the program requirements that exist independently from the actions Plaintiffs have alleged and challenged. When these steps are completed, an award is considered "closed," and it becomes eligible for reimbursement. *See* Davis Decl. at ¶5. Funding for all closed awards has been flowing unimpeded since at least as early as February 27. *See id.* at ¶8.

As for Comprehensive awards that have not "closed," however, some of those pre-established administrative steps remain incomplete, delaying disbursements; but HUD has not stopped working to resolve the problems that have delayed closing, which are described in the attached Davis Declaration and explained further below. The crux of the issue is that under those current program requirements, it is impossible for awardees to complete some of the closing steps (for reasons discussed below), which means that HUD cannot proceed to reimburse their costs until it amends the program requirements to redesign these steps. After the Court entered its order, the HUD component responsible for administering GRRP funds drafted new

program requirements and then initiated the process for amending the program requirements to effect that redesign. Typically, such an amendment process takes a matter of months. *See* Davis Decl. at ¶22. The Agency remains in the process of amending the program requirements in order to clear the logjam preventing funding disbursement of Comprehensive stream awards that have not closed. This process involves numerous stakeholders and policy decisions, and Defendants respectfully request that they be permitted to continue making progress on this issue.

Ultimately, the impediment to closing this subset of awards (i) is unrelated to OMB Memorandum M-25-11 and the broader funding freeze alleged to be at issue here, (ii) existed before the Court entered its preliminary injunction, and (iii) is in the process of being removed. Thus the "status quo" to which the preliminary injunction intended to return the parties has remained in place as the Agency works to resolve this independent, pre-existing barrier to closing certain awards.

### *Background*

The IRA authorizes HUD "to establish by notice any requirements that the Secretary determines are necessary for timely and effective implementation of [GRRP]." IRA Section 30002(e). This allows HUD to proceed more expeditiously to set or change program requirements than it would through notice-and-comment rulemaking, and in the ordinary course, the process for establishing requirements by notice typically takes a matter of months. *See* Davis Decl. at ¶22. The GRRP is currently governed by Housing Notice 2023-05 (May 11, 2023), as amended by Housing Notice 2024-01 (January 8, 2024) (collectively, the "Notice"), which is

attached to the Davis Declaration as Exhibit A. *See* Davis Decl. at ¶4.

Under the current Notice establishing program requirements, awardees must complete certain work with a Multifamily Assessment Contractor ("MAC"), a contractor engaged by HUD to conduct or review assessments, to make recommendations regarding the scope of work, and to conduct certain oversight activities on HUD's behalf with respect to the implementation of the scope of work. However, doing so is currently impossible because no MACs are currently engaged to complete the required work—their contracts were terminated and they were sent stop work orders in February (well before this Court entered its preliminary injunction). *See* Davis Decl. at ¶15. Shortly afterwards, their outstanding invoices for reimbursement were paid, and the remaining funding for MACs was designated unobligated. *See id.* Plaintiffs did not challenge these actions relating to MACs.

When the Court entered its preliminary injunction in April, HUD was faced with two policy options to overcome this barrier to closing and subsequent funding disbursement for impacted awards. *See id.* at ¶20. It could either (i) begin a new procurement process to solicit and engage with new MACs (or rehire the old ones), which would take many months if not more than a year, or (ii) it could amend the program requirements spelled out in the Notice to redesign the steps requiring awardees' cooperation with the now-terminated MACs. *See id.*

In the interim, on May 20, 2025, Congress took up consideration of the One Big Beautiful Bill Act ("OBBBA"). *See* H.R. Rep. No. 119–106 (2025). That bill included a provision stating: "The unobligated balance of amounts made available under section

30002(a) of Public Law 117-169 (commonly referred to as the "Inflation Reduction Act"; 136 Stat. 2027) are rescinded." *Id*. at 454. Under the bill, the unobligated funding available to procure new MACs would be rescinded, thus defeating the purpose of initiating any solicitation. That is what happened when the OBBBA became law on July 4, 2025; the unobligated GRRP funding was rescinded, and the option to procure new MACs was no longer available. *See* One Big Beautiful Bill Act, Pub. L. No. 119-21, § 30002 ("The unobligated balances of amounts made available under section 30002(a) of the Act entitled 'An Act to provide for reconciliation pursuant to title II of S. Con. Res. 14', approved August 16, 2022 (Public Law 117–169; 136 Stat. 2027) are rescinded."); Davis Decl. at ¶23.

Now, the only option left for HUD to progress the remaining Comprehensive stream awards toward closing is to amend the program requirements. As the Davis Declaration attests, HUD's standard process for amending program requirements involves a rigorous review that takes a matter of months. *See* Davis Decl. at ¶22. The HUD component responsible for GRRP has initiated the process to amend the Notice governing the program and the Agency is in the process of actively considering the removal of the MAC-related requirements as part of that contemplated amendment.

## *Discussion*

The background here shows that there are complexities to administering a large federal spending program, and that federal agencies are often asked to weigh the pros and cons of different approaches to resolve issues that arise. When the Court ordered Defendants to "take immediate steps to resume the processing,

disbursement, and payment of already-awarded funding appropriated under the Inflation Reduction Act…," Preliminary Injunction, ECF No. 45, it also "declined to establish a preclearance regime" that would deprive the Executive Branch of its autonomy and policymaking authority. April 28 Order at 3, ECF No. 58. It should not diverge from that approach now, particularly to the extent it is asked to interject itself into policy deliberations entrusted to the political branches about aspects of the design of a large federal spending program that Plaintiffs have not challenged and that they do not allege impacts their own awards.

What is clear is that in response to the Court's injunction, HUD has made available all funding under two of the three GRRP funding streams and any funding under the third stream that is permissible under pre-existing program requirements. In the case of Comprehensive funding awardees who have not completed all closing steps, there are pre-existing operational hurdles in place delaying their funding. But these hurdles existed independent of the alleged funding pause at issue in this case and are part of the status quo to which the injunction returned the parties. Nonetheless, HUD is working on removing these hurdles, and it is unequivocal in its position that the "Comprehensive awards themselves are fully obligated and the award of funds is not impacted by the rescission in the OBBBA." Davis Decl. at ¶25. In other words, the funds are coming. The longstanding administrative process for deciding which policy option is most appropriate to achieve this takes time, but it is underway. *See id*. at ¶22 ("The timing of this process can vary widely depending on multiple factors including how much feedback is received from other Offices within

HUD, the extent of negotiation required to reconcile differences, and whether the notice must be reviewed by OMB."). Accordingly, it remains true that HUD has "resumed processing awarded GRRP loans/grants as it would in the ordinary course." Defs.' Second Status Report at 3, ECF No. 51.[2]

It is worth taking a step back to remember what this case is about. Plaintiffs challenge a "funding freeze" dictated by OMB Memorandum M-25-11 categorically pausing IRA and IIJA funds simply *because* they are IRA and IIJA funds. That is not what is happening here. When the injunction issued, the Court made clear that it was "not requiring the Government to do anything over than maintain [its] current obligations or, alternatively, pause or terminate them in an individualized way consistent with law." Prelim. Inj. at 48 n.10. Additionally, it stated that "[t]he Court's order does not prevent the Government from making funding decisions in specific cases according to processes like those established in 2 C.F.R. § 200.340." *Id*. at 56.

To be sure, there is a pre-existing procedural barrier in place preventing Comprehensive funding awardees from proceeding to closing, but this is a result of operational issues that are completely tangential to this case and OMB Memorandum

---

[2] Furthermore, Defendants represented that "for projects that have . . . reached the point where money can go out the door, [where] all of the closing documents and everything are in order, that HUD is continuing to disburse that money. And for projects that are earlier in the process where some of the paperwork still needs to be exchanged between the grantee and HUD, that HUD is processing those." Apr. 23, 2025, Hearing Tr. at 5, ECF No. 61. Thus, HUD was clear about the distinction between closed and unclosed awards and that the latter would require additional processing before funding could be disbursed.

M-25-11.³ The answers to these operational issues must be determined by the political branches, not Plaintiffs, particularly when the possible solutions include either (a) a determination about how to spend unobligated funding,⁴ or (b) exercising discretionary authority delegated by Congress to amend GRRP program requirements. When passing OBBBA in July, Congress decided to rescind the unobligated GRRP funding, thus leading the Agency to pursue the only remaining alternative. Such action demonstrates that the Agency is acting in a manner accountable to Congressional will, this Court's order, and the system of checks and balances is working as it should be.

The IRA specifies that HUD "*may* waive or specify alternative requirements … to facilitate the use of amounts made available under this section" and that it is granted the "authority to establish by notice any requirements that *the Secretary determines are necessary* for timely and effective implementation of the program and expenditure of funds appropriated…." IRA Section 3002(d)-(e) (emphasis added). The status quo as of the preliminary injunction remains unchanged for awards that are not yet closed; they have unrelated and pre-existing program requirements to fulfill,

---

³ Indeed, the impetus for the problem at hand was the termination of contracts with the MACs, and this Court has stated that "the analysis for termination seems different . . .. I think that's where you get into this may be a separate lawsuit." May 5, 2025, Hearing Tr. at 14, ECF No. 69.

⁴ Such a decision may have been necessary had HUD chosen to reengage with MACs. This is the quintessential type of decision that is committed to agency discretion, *see Lincoln v. Vigil*, 508 U.S. 182, 192 (1993) ("The allocation of funds from a lump-sum appropriation is another administrative decision traditionally regarded as committed to agency discretion.").

which the Agency is working to address in light of the Court's order.

The Court indicated that it did not intend to "prevent the Government from making funding decisions in specific cases according to [other regulatory] processes[,]" such as those created pursuant to the above authority conferred by the IRA. Prelim. Inj. at 56. HUD has a process in place it traditionally follows to amend program requirements like the GRRP's, and it involves review by HUD leadership, other offices within HUD, and even OMB, as appropriate. This process takes time. But the Executive Branch is entitled to take the time needed to make the right policy decision when it is vested with the type of discretionary authority that the IRA contemplates. *Cf. Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63 (2004) ("the only agency action that can be compelled under the APA is action legally required. This limitation appears in § 706(1)'s authorization for courts to 'compel agency action unlawfully withheld.'"). This traditional use of executive authority to redesign program requirements is assuredly part of the status quo to which the preliminary injunction here intended to return the parties.

### *Conclusion*

Once more, Defendants are undisputedly in compliance with the preliminary injunction as to two of three GRRP funding streams and as to part of the third. Pre-existing program requirements have delayed closing a subset of Comprehensive awards, but the Agency is working to amend those independent requirements.

Defendants respectfully request the Court decline to find that HUD's actions contravene the preliminary injunction. Defendants do not believe further relief is

warranted to maintain the status quo, particularly because the universal preliminary injunction currently in place already "likely exceed[s] the equitable authority that Congress has granted to federal courts." *Trump v. CASA, Inc.* 145 S. Ct. 2540, 2548 (2025). None of the named Plaintiffs in this action received Comprehensive awards or suffers any harm by any delay in processing them, meaning further relief from this Court is not necessary to "'administer complete relief between the parties.'" *Id.* at 2557 (quoting *Kinney-Coastal Oil Co. v. Kieffer*, 277 U.S. 488, 507 (1928)). Nevertheless, Defendants respectfully suggest that they will promptly alert the Court regarding significant developments in the ongoing process to amend the program requirements.

Dated: August 13, 2025                Respectfully submitted,

                                      BRETT A. SHUMATE
                                      Assistant Attorney General

                                      ALEXANDER K. HAAS
                                      Director, Federal Programs Branch

                                      JOSEPH BORSON
                                      Assistant Director, Federal Programs Branch

                                      */s/ Eitan Sirkovich*
                                      EITAN R. SIRKOVICH
                                      CHRISTOPHER M. LYNCH
                                      Trial Attorneys
                                      United States Department of Justice
                                      Civil Division, Federal Programs Branch
                                      1100 L Street NW
                                      Washington, DC 20530
                                      Tel.: (202) 353-5525
                                      Email: eitan.r.sirkovich@usdoj.gov