UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| WOONASQUATUCKET RIVER WATERSHED COUNCIL, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DEPARTMENT OF AGRICULTURE, *et al.*, <br><br> Defendants. | Civil Action No. 1:25-cv-97 (MSM) |

**JOINT STATUS REPORT**

*Report from Defendants*

After the filing of the parties' Joint Status Report of January 14, 2026, HUD received notification from OMB that interagency review of the draft Notice was complete. The Office of Recapitalization immediately initiated the signature process, and Assistant Secretary for Housing and Federal Housing Commissioner Frank Cassidy signed the Notice on Friday, January 23, 2026. On Monday, January 26, 2026, HUD posted the Notice, now referenced as Housing Notice 2026-01, to the public website at https://www.hud.gov/sites/default/files/hudclips/documents/2026-01hsng.pdf.

Housing Notice 2026-01 modifies the GRRP program structure regarding Comprehensive awards such that the timeline for implementation of these awards is now in the hands of the awardees. Previously, Comprehensive awardees were required to rely on Multifamily Assessment Contractors for the assessment of the properties' investment needs – the first steps in the process. With the termination of

-1-

the Multifamily Assessment Contractors' engagement, implementation of Comprehensive awards was frozen. Section 5.3 of this revised Notice instructs Comprehensive awardees to commission these assessments, eliminates the requirement for one of the assessments, and provides for reimbursement of the cost of the assessments from the GRRP award. This revision increases the awardees control over both the timeline and the content of the scope of work to be funded by the GRRP award. The Comprehensive awardees should immediately commission these assessments and develop a proposed scope of work for the GRRP funds based on the assessments and their objectives for the property. HUD is ready to review the proposed scopes of work when the awardees submit them for approval. At this point, with the publication of the Notice, the Comprehensive awards join the Elements and Leading Edge awards in terms of their processing status – the Notice specifies submissions required from each awardee; HUD will review and respond to the submissions when received; and when the awardee's submissions comply with the program requirements, HUD will close on the award, execute final documents, and disburse funds in response to valid requisition requests.

Notwithstanding these positive developments, Plaintiffs below take the dramatic and unwarranted step of calling upon the Court to explore sanctions or contempt. That is a serious matter, and one that cannot be casually raised in a Joint Status Report. Disregarding all appropriate process, and without ever seeking to meet and confer, Plaintiffs tack their request onto the end of their report as a throwaway. "When a party moves for sanctions," however, "it must follow certain

additional procedural requirements. The motion 'must be made separately from any other,' and it 'must be served [on the offending attorney or unrepresented party] under [Federal Rule of Civil Procedure] 5[.]'" *Triantos v. Guaetta & Benson, LLC*, 91 F.4th 556, 561 (1st Cir. 2024) (quoting Fed. R. Civ. P. 11(c)(2)). Defendants will not litigate the merits of Plaintiffs' accusations in a status report. If and when they choose to proceed in the appropriate manner, Defendants are prepared to defend against their baseless request.[1]

*Report from Plaintiffs*

HUD has been out of compliance with this Court's April 15, 2025 order for more than nine months, as it allegedly worked to amend a notice requirement. Now that HUD has published the amended notice, it is clear that the relevant change—approximately one paragraph—could have been completed in a matter of days. HUD instead avoided compliance for more than nine months as it implemented *other* policy priorities, keeping funds frozen in violation of this Court's order all the while. As explained in more detail below, Plaintiffs respectfully suggest that the Court may consider whether exploring sanctions or a contempt inquiry is appropriate at this juncture.

HUD's excuse for its long-standing noncompliance has been that HUD must

---

[1] Because continuing to exchange dueling positions in a Joint Status Report on the eve of filing is an ineffective and inappropriate method of addressing this issue, Defendants reserve all rights to address all issues raised in a procedurally proper manner.

amend the program requirements to delete the requirement that Comprehensive awardees coordinate with Multifamily Assessment Contractors, known as MACs, which were no longer available (because HUD chose to fire them). *See generally* Dkt. 80. The amendment, HUD previously explained, must "redesign the steps requiring awardees' cooperation with the now-terminated MACs," *id.* at 4, and this amendment process "involves a rigorous review that takes a matter of months," *id.* at 5.

This week, we see the fruits of that rigorous, complex amendment process: the new HUD notice contains precisely one sentence relating to the MAC requirement. It states (at page 12): "HUD will not engage external Multifamily Assessment Contractors (MACs) for the required assessments and procuring the assessments is the responsibility of the Owner." HUD also makes minor alterations to the surrounding paragraph to make clear that the grantee, rather than HUD, will commission those required assessments.

There is no reason that HUD should have taken more than nine months to amend one single paragraph. Indeed, it did not even have to re-issue the entire notice; HUD has previously made textual amendments in short supplemental notices that merely flag a sentence for deletion, revision, or addition. *See* Green and Resilient Retrofit Program for Multifamily Housing (GRRP) – Supplemental Notice A, Notice H 2024-1 (Jan. 8, 2024), https://www.hud.gov/sites/dfiles/OCHCO/documents/2024-01hsgn.pdf. HUD could have done so here, and done so with alacrity.

Instead, during the prolonged noncompliance period, HUD undertook other substantive changes to the program, unrelated to the deletion of the MACs, none of

which were necessary to come into compliance with the Court's order. These changes include converting all Comprehensive grants to loans and rendering them ineligible for certain uses (such as solar energy). Even if these amendments reflect valid and legal policy preferences—which plaintiffs in no way concede—there is no reason that HUD could not and should not have first amended the notice as to the MACs to comply with the order, and *then* considered any further policy amendments separately. Indeed, the entire point of the Court's order is that HUD was to continue processing things in the normal course *while* it considered the program, not continue a freeze until it imposed its policy preferences on already awarded grants.

This delay, entirely of HUD's own creation, results in a timing crisis for grant recipients, as a statutory deadline requires disbursement by September 30, 2028. *See* Inflation Reduction Act, Pub. L. No. 117-169, sec. 30002, 136 Stat. 2027. Although this may seem like a long time away, the loss of nine months will make it difficult for recipients to meet that deadline. Had HUD simply amended the single paragraph regarding MACs on April 16—or even within a few weeks of this Court's ruling— many Comprehensive grants would likely have closed by the time HUD sought to implement these changes, or been well on their way. Instead, grantees now face conversion to loans, limitations on expenditures, and a fast-approaching deadline that may force them to forfeit funds if they cannot meet it, through no fault of their own.[2]

---

[2] Although HUD made many changes to the notice unrelated to the MACs issue, it did not take the opportunity to ameliorate the harm it caused through its

Over the past several months, HUD has repeatedly told plaintiffs' counsel and this Court that it was working expeditiously to come into compliance with the Court's order. Although HUD had previewed that the amended notice "would make other program modifications necessary to align with the Administration's priorities," Dkt. 80-1 ¶ 21, Plaintiffs had understood those other modifications to be only those "necessary," which flowed from the changes to the MAC structure. The amended notice now shows that HUD was doing no such thing. Instead, HUD delayed for nine months making a change it could've made in a week, and used that extended freeze to make other alterations to the program. HUD declines to offer explanation or defense of these actions. Plaintiffs therefore respectfully suggest that it is appropriate for the Court to consider holding a hearing to investigate whether sanctions[3] or a contempt inquiry are appropriate at this juncture, including an assessment of steps to ensure that HUD does not benefit from its months-long violation of this Court's order.

Dated: January 28, 2026            Respectfully submitted,

                                   BRETT A. SHUMATE

---

delay. For example, HUD could have allowed recipients to receive their funds at the close of construction (instead of later) or planned to disburse funding into the grant drawdown system before the deadline.

[3] HUD complains that Plaintiffs failed to follow "appropriate process," but their citation is inapposite. The language they pull from *Triantos* is in the specific context of Rule 11, which is hardly the only form of sanction available to this Court. And even in that context, *Triantos* makes clear that "[s]anctions may be initiated by the court *or* an opposing party's motion." 91 F.4th at 561 (emphasis added). The Court is well familiar with the history here.

Assistant Attorney General
Civil Division

ALEXANDER K. HAAS
Director
Civil Division, Federal Programs Branch

JOSEPH BORSON
Assistant Director
Civil Division, Federal Programs Branch

*/s/ Eitan R. Sirkovich*
EITAN R. SIRKOVICH
CHRISTOPHER M. LYNCH
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20530
Tel.: (202) 353-5525
Email: eitan.r.sirkovich@usdoj.gov

*Counsel for Defendants*

/s/ Miriam Weizenbaum

Miriam Weizenbaum (RI Bar No. 5182)
DeLuca, Weizenbaum, Barry & Revens
199 North Main Street
Providence, RI 02903
(401) 453-1500
miriam@dwbrlaw.com

Kevin E. Friedl* (DC Bar No. 90033814)
Jessica Anne Morton* (DC Bar No. 1032316)
Robin F. Thurston* (DC Bar No. 1531399)
Skye L. Perryman* (DC Bar No. 984573)
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
kfriedl@democracyforward.org
jmorton@democracyforward.org
rthurston@democracyforward.org

sperryman@democracyforward.org

\* admitted *pro hac vice*

*Counsel for Plaintiffs*

-8-